STATE OF CONNECTICUT *v.* HERMAN FISHMAN

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 1-2896

Argued November 16, 1962—decided March 14, 1963

*Sidney Vogel,* with whom, on the brief, was *Robert B. Seidman,* both of Norwalk, for the appellant (defendant).

*George F. Carroll, Jr.,* assistant prosecuting attorney, for the appellee (state).

PRUYN, J.   The defendant, a professional bondsman, in a trial to the court was found guilty on nine counts of charging commissions or fees as a professional bondsman in excess of the maximum limits prescribed by § 29-151 of the General Statutes.   On his appeal, he admits the facts of overcharge but asserts that the statute under which he was convicted is unconstitutional as depriving him of the equal protection of the laws within the meaning of the relevant provisions of the United States and Connecticut constitutions.   U.S. Const. amend. XIV § 1; Conn. Const. art. I §§ 1, 12.

Connecticut, like other states, has regulated the business of professional bondsmen.   Such a business affords peculiar opportunity for fraud or imposition on the unfortunate persons who find themselves in the toils of the law as a result of a criminal charge and have need for bail.   Such a business may also be so conducted as to interfere with the proper administration of the criminal laws.   The unscrupu-

lous may exact high fees from the poor and ignorant, devise ways for the escape of violators of the penal laws and use improper or illegal means to secure acquittal, or, in some cases, be financially irresponsible. Thus, this business falls within the police power of the state. *Jackson* v. *Beavers,* 156 Ga. 71, 75.

Our first statute, enacted in 1945 (Sup. 1945, §§ 1021h—1024h), provided for the registration, with the clerk of the Superior Court in each county in which it was intended to do business, of "[a]ny person who makes a business of furnishing bail in criminal cases," and for the filing of a financial statement under oath and the payment of a fee of $100. The fee of a bondsman was limited to 5 percent of the amount of bail furnished up to $5000, and 2.5 percent on any sums above that amount. The only penalty for violation of the statute was a fine of not more than $100 or imprisonment for not more than thirty days or both. This statute was construed by the attorney general of Connecticut as not including corporate sureties within its purview. 25 Conn. Atty. Gen. Rep. 23.

The 1945 statute, having proven wholly ineffectual, was repealed by the 1947 General Assembly, and in its place a new statute (Sup. 1947, §§ 639i—647i) was adopted. It has continued unchanged and is now chapter 533 (§§ 29-144—29-152) of the General Statutes. Under this statute, professional bondsmen are placed under the jurisdiction and strict supervision of the state police department. They are limited to those persons who are resident electors of good moral character and sound financial responsibility and who have not been convicted of a felony. They must be licensed, they must make annual reports to the state police department, and they shall charge for commission or fee a maximum of $5 for bail up to $100, 5 percent of the amount of

bail from $100 to $5000, and 2.5 percent of the amount of bail in excess of $5000. The penalty for violation of the statute is a fine of not more than $1000 or imprisonment for not more than two years, or both, and the permanent forfeiture of the right to engage in the business of professional bondsman.

Insurance companies authorized to write surety bonds and authorized to do business in this state may furnish bail bonds in criminal proceedings. The business of insurance is regulated by an entirely different set of statutes, title 38. The rates which such companies may charge for surety bonds are governed by chapter 682, §§ 38-186—38-201. Rates are based on loss experience, catastrophe hazards, dividends, expenses, and the like; they are filed with the insurance commissioner and are subject to his approval. Uniformity among insurers is neither required nor prohibited. §§ 38-187, 38-188. The penalty for violation of chapter 682 is a fine of not more than $1000; there is no mandatory suspension of the insurer's license to do business in Connecticut, but the insurance commissioner may suspend the license for failure to obey his order. § 38-200. Insurance agents are also closely regulated. C. 677. They must be persons of good moral character and financially responsible; they must be licensed; and they must take a personal written examination in order that the insurance commissioner may determine their trustworthiness and competency. § 38-72. Their licenses may be suspended or revoked for cause shown. § 38-74.

The defendant does not quarrel with the well-recognized principle that the state under the police power may regulate the business of insurance and also the business of professional bondsmen. Likewise, the defendant does not contest the right of the legislature to treat natural persons in a different

manner from corporations. He concedes that if the question of the financial responsibility of the bondsman or his good moral character were at issue, the state might properly discriminate between natural persons and corporations under the supervision of the insurance commissioner. The narrow issue which he raises on this appeal is the validity of the distinction between individual and corporate bondsmen as to the fees or rates permitted to be charged for their services.

When the constitutionality of a statute is called in question, it is the duty of the court to approach it with caution, to examine the statute with care, to make every presumption and intendment in its favor and to sustain it unless it is clearly invalid. *Snyder* v. *Newtown,* 147 Conn. 374, 390; *Schwartz* v. *Kelly,* 140 Conn. 176, 179. The equal protection clause of the United States constitution (amend. XIV § 1) and the corresponding provisions of the constitution of Connecticut (art. I §§ 1, 12) have substantially the same meaning. The decisions of the federal courts in respect to the United States constitution are binding on state courts. *Snyder* v. *Newtown,* supra, 380, 381. Generally speaking, the question of classification is primarily for the legislature, which has a wide field of choice in that regard, and the courts will not interfere unless the classification is clearly unreasonable. *State* v. *Shuster,* 145 Conn. 554, 558. Corporations may not be separately classified merely because they are corporations, but different treatment of corporations may be justified in view of the objects of the legislation and the peculiar attributes of corporations as distinguished from natural persons. *Nilsen* v. *Davidson Industries, Inc.,* 226 Ore. 164, 171; 16A C.J.S., Constitutional Law, § 495. Any classification must rest on distinctions bearing natural and substantial differences and having a fair and substan-

tial relation to the purposes of the legislation. *Atchison, T. & S.F. Ry. Co.* v. *Vosburg,* 238 U.S. 56, 59; *State* v. *Hurliman,* 143 Conn. 502, 506; *Schwartz* v. *Kelly,* supra, 181.

In this connection, the pertinent facts as found by the court may be summarized as follows: Four surety companies have filed with the office of the insurance commissioner of Connecticut specific rates for criminal bail bonds, in accordance with chapter 682 of the General Statutes. It is the function of the rating division of the insurance department to determine that rates charged by insurance companies in this state conform to the provisions of the rating regulatory laws that such rates shall not be excessive, inadequate or unfairly discriminatory. In determining whether bond rates comply with the rating regulatory laws, the rating division relies on statistical data when it is available; otherwise, the element of judgment enters into the determination. The state insurance department is responsible for the licensing, regulation and control of surety companies which participate in the field of criminal bail bonds and the agents of such surety companies. The state police department is responsible for the licensing, regulation and control of individual professional bondsmen. All surety companies which participate in the field of criminal bail bonds are treated alike and are subject to the same control and discipline. The criminal bail bond activity of surety companies constitutes a very minor part of the total amount of insurance conducted by them in this state. The rate approved by the insurance department is the rate to be used by the surety company, until or unless the approved rate does not comply with the regulatory laws because of change in conditions, at which time a change in the rate may be initiated by the company or by the department. The rate filed by one of the four companies

doing criminal bail bond business in this state and approved by the insurance department is 5 percent or $5 per hundred or $50 per thousand (with no limitation as to the amount of the bond), the company's share being 2 percent and the agent's share 3 percent. The second company's approved rate is the same, with the same division between the company and the agent, but with a minimum premium of $15, $10 for the company and $5 for the agent. The remaining two companies have identical approved rates, 7 percent or $70 per thousand, with no limitation as to the amount of the bond. The company's share is 2 percent and the agent's share 5 percent, with a minimum total premium of $20, $5 for the company and $15 for the agent. There is more paper work attached to writing a criminal bail bond as an agent for a surety company than there is when writing such a bond as an individual professional bondsman. The professional bondsman pledges his personal assets as security for the bond, while an insurance agent pledges the assets of his company. A professional bondsman seldom has occasion to write a criminal bail bond in excess of $5000. When a defendant fails to appear on a bail bond written by a professional bondsman, the latter must make good the loss; whereas the loss resulting from such nonappearance on a bond written by an insurance agent must be made good by the surety company, which then looks to the agent for indemnification. The agent has larger resources and assets available to him through the surety company than does the individual professional bondsman.

Obviously, there are vast differences between the business of insurance and the business of professional bondsmen. These differences require different methods of regulation, including the regulation of rates to be charged for criminal bail bonds. The

foundations on which the rates of the two classes of sureties are based are entirely different. In view of the inherent substantial differences between the two classes, it is not unreasonable of the legislature to provide a different method of compensation for the individual bondsman from that prescribed for the insurance company. Such differences have a fair relation to the purposes of the statute and are germane to it.

There is another reason why the defendant should not prevail on this appeal. The defendant obtained a license to do business and did business as a professional bondsman and now attacks the statute. "Undoubtedly men may not take advantage of a law when it suits them, and then attack it when it does not." *Owens* v. *Corporation Commission,* 41 F.2d 799, 803 (D. Okla.). Having accepted a license under the statute and having acted thereunder, the defendant cannot claim the statute is unconstitutional. *State ex rel. American Distilling Co.* v. *Patterson,* 133 Conn. 345, 349; *Spencer* v. *Consumers Oil Co.,* 115 Conn. 554, 559; *Chudnov* v. *Board of Appeals,* 113 Conn. 49, 57; *Palumbo* v. *George A. Fuller Co.,* 99 Conn. 353, 358.

There is no error.

In this opinion DEARINGTON and JACOBS, Js., concurred.