525 A.2d 446

Sidney Reiter, t/a Rider Insurance Service, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued February 26, 1987, before Judges MACPHAIL and BARRY, and Senior Judge BLATT, sitting as a panel of three.

*Ronald Jay Smolow,* for petitioner.

*James A. M. Zarrella,* Assistant Counsel, with him, *Linda J. Wells,* Chief of Litigation and *M. Hannah Leavitt,* Chief Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, May 5, 1987:

Sidney Reiter, t/a Rider Insurance Service, Inc. (Petitioner) has appealed from an order of the Acting Insurance Commissioner which suspended Petitioner's insurance agent's license and required Petitioner, *inter alia,* to cease and desist from denying access to his business records by Insurance Department investigators and to pay a $1,000.00 civil penalty. The sole basis for the Commissioner's order was Petitioner's refusal to allow Department investigators to conduct a search of his business records.

The Commissioner's fact findings, which are supported by substantial evidence, reflect that on February 11, 1985, two Department investigators visited Petitioner's place of business and asked to inspect Petitioner's "insurance records, including receipts, checkbooks, cancelled checks, finance arrangements and applications for the Pennsylvania Automobile Insurance Plan" dating from June 1, 1984. Fact Finding No. 3. It is undisputed that the investigators gave no prior notice of their inspection call, had obtained no subpoena or warrant for the search and were not acting on the basis of any specific complaint regarding Petitioner.

At the time of this request, Petitioner was a licensed and active insurance agent, although his company,

Rider Insurance Service, Inc., had filed a certificate of election to dissolve with the Corporation Bureau of the Department of State on August 2, 1984.[1] Petitioner alleges that he sold his insurance agency to Stanley Weiss on August 1, 1984. Petitioner refused to grant the investigators access to his records on February 11. The investigators returned to Petitioner's office on February 12, 1985 and were offered access to two boxes of records. The investigators declined to review these records based on their opinion that the files contained therein constituted only a part of the requested records.

On appeal, Petitioner first argues that since insurance records were offered to the investigators on February 12, the Commissioner erroneously found a denial of access to the pertinent records. Testimony given by the investigators involved, however, reveals that on February 11, 1985 they requested access to *all* insurance business records from June 1, 1984 to date. Both investigators testified that in their opinion the two boxes offered for their inspection on February 12 could not have contained a complete compilation of the business' records. In fact, there was an indication by Petitioner that the contents of the boxes were limited to Automobile Insurance Plan (AIP) applications from August 1, 1984 to the date of the investigators' request. Thus, we conclude that the Commissioner's finding of a denial of access to the requested business records is supported by the record.

In a similar vein, Petitioner next argues that since Rider Insurance Service, Inc. filed an election to dissolve on August 2, 1984, the investigators could not have known, without reviewing them, whether the of-

_____

[1] The Commissioner's fact findings incorrectly refer to the date on which the election to dissolve certificate was filed as August 2, 1985.

fered files contained all of the remaining records of that corporation. We observe, however, that the investigators' request was not directed specifically at Rider Insurance Service, Inc. and that it appears from the record that Petitioner continued as an active insurance agent despite the dissolution of his company. Moreover, it does not appear that Petitioner offered any of his business records from June 1 through August 2, 1984 for inspection despite the investigators' specific request for records from that time period. In sum, we believe that the Commissioner's finding that Petitioner denied the investigators access to his business records is not rendered erroneous by virtue of the dissolution of Rider Insurance Service, Inc.

We turn, then, to the remaining issue which constitutes the gravamen of Petitioner's appeal. Petitioner contends that the Department's effort to inspect his business records without prior notice or a warrant constituted a violation of his right to be free from unreasonable searches and seizures under the federal and state Constitutions. *See* U. S. Const. amend. IV; Pa. Const. art. I, §8.

Petitioner relies on the Pennsylvania Supreme Court's recent decision in *Commonwealth v. Lutz,* 512 Pa. 192, 516 A.2d 339 (1986), to support his position.[2]

---

[2] On March 24, 1987, the United States Supreme Court vacated the judgment in *Lutz* and remanded for further consideration in light of the Supreme Court's recent decision in *United States v. Dunn,* 55 U.S.L.W. 4251 (U.S. March 3, 1987). In *Dunn,* the Supreme Court further refined the analysis to be used in applying the "curtilage concept" to the protections afforded by the Fourth Amendment. As a general proposition, the Fourth Amendment affords protection to those areas within "the curtilage" of a home, but not to the "open fields" beyond the curtilage.

In *Lutz,* it was preliminarily determined that the "open fields" doctrine did not apply and that Fourth Amendment protections should be afforded to the lands at issue. Thus, it appears that the

In *Lutz*, Justice HUTCHINSON, in a plurality opinion, addressed the issue of whether the warrantless search provisions of the Solid Waste Management Act,[3] were unconstitutional. It was concluded that warrantless searches of non-hazardous waste facilities, absent regulatory definition of the circumstances under which such inspections would be conducted, constituted a violation of the Fourth Amendment. In reviewing relevant United States Supreme Court decisions, Justice HUTCHINSON noted the following four factors which have been used in balancing the need for warrantless administrative searches with the business owner's privacy interest:

> [F]irst, whether the business operator is on notice that he is engaged in activity which may subject him to warrantless searches; second, whether the regulation of the industry is pervasive and regular, considering the history of the regulatory scheme as a factor in this determination; third, whether there is a strong governmental interest in the search; and fourth, whether there are reasonable legislative or administrative standards governing the search.

*Id.* at 201, 516 A.2d at 343 (footnote omitted).

In the instant case, the Department's authority to conduct inspections arises from Section 7 of the Unfair Insurance Practices Act (Act)[4] which provides as follows:

> The Commissioner may examine and investigate the affairs of every person engaged in

---

remand for further consideration in light of *Dunn* relates solely to the Pennsylvania Supreme Court's resolution of the "open fields" doctrine question. We do not believe that the aspects of the analysis in *Lutz* which we rely upon herein have been affected by the United States Supreme Court order.

[3] Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§6018.101—6018.1003.

[4] Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. §1171.7.

the business of insurance in this state in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by this act.

The Department has interpreted this provision to authorize periodic warrantless searches of insurance businesses. For the reasons which follow, we disagree with the Department's interpretation of the Act.

It is, of course, to be presumed when construing a statute that the legislature did not intend to violate either the United States or Pennsylvania Constitutions. Section 1922(3) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1922(3); *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985). The party challenging the constitutionality of a statute bears the heavy burden of establishing that the statute clearly, palpably and plainly violates the Constitution, with any uncertainty being resolved in favor of its validity. *Germantown Savings Bank v. City of Philadelphia*, 98 Pa. Commonwealth Ct. 508, 512 A.2d 756 (1986). Moreover, where a statute is susceptible of differing interpretations, the interpretation which will sustain the constitutionality of the statute must be adopted. *Country Paradise Park, Inc. v. Sugarcreek Township*, 65 Pa. Commonwealth Ct. 93, 441 A.2d 821 (1982).

In *Lutz*, Justice HUTCHINSON addressed the preliminary issue of whether the Solid Waste Management Act indeed authorized warrantless searches as claimed by the Department of Environmental Resources (DER). In concluding that the legislature had authorized such searches, it was noted that the statute specifically affords to DER a "right of entry" to facilities where solid waste is generated or managed. It was further noted that United States Supreme Court cases, in which the constitutionality of warrantless administrative searches

have been analyzed, dealt with federal statutes which similarly designate a specific "right of entry."[5]

In analyzing Section 7 of the Act, however, we find no indication that the legislature has granted the Department a right to enter insurance businesses without a warrant or subpoena. Section 7 grants to the Commissioner the authority to "examine and investigate the affairs" of persons engaged in the insurance business. The Act does not specify the manner in which such investigations are to be conducted, nor have Department regulations provided applicable standards. Absent specific authorization for warrantless searches and given the serious constitutional implications which such searches would present under the test enunciated in *Lutz*, we conclude that the Act does not authorize the Department to conduct nonconsensual warrantless searches.[6]

We note that the Department argues that the "required records doctrine" applies here and supports the Commissioner's conclusion that the attempted

_____

[5] *See, e.g.,* Internal Revenue Code, 26 U.S.C. §§5146, 7606 analyzed in *Colonnade Catering Corp. v. United States,* 397 U.S. 72 (1970); Gun Control Act of 1968, 18 U.S.C. §923(g) analyzed in *United States v. Biswell,* 406 U.S. 311 (1972); Section 8 of the Occupational Safety and Health Act of 1970, 29 U.S.C. §657 analyzed in *Marshall v. Barlow's Inc.,* 436 U.S. 307 (1978).

[6] We render no opinion as to the proper procedure to be followed in conducting Department investigations. We do note, however, that as a practical matter most insurance businesses are likely to allow inspections by the Department without a warrant and it would seem appropriate that warrants only be sought when entry has been refused. *Cf. Camara v. Municipal Court,* 387 U.S. 523 (1967). Moreover, if a warrant is necessary, the probable cause requirement may be satisfied by a showing that reasonable legislative or administrative standards for conducting the search are satisfied with respect to a particular person engaged in the business of insurance. *See generally Marshall; Camara.*

search in the instant case was valid. The "required records doctrine" as enunciated in *Shapiro v. United States,* 335 U.S. 1 (1948), provides that no privilege exists with regard to business records which are *required by law* to be maintained. In the case of *State Real Estate Commission v. Roberts,* 441 Pa. 159, 271 A.2d 246 (1970), *cert. denied,* 402 U.S. 905 (1971), our state Supreme Court applied this doctrine to uphold a warrantless search of a real estate broker's escrow account. The applicable statute in *Roberts* specifically required that records regarding escrow accounts be maintained.

In the instant case, the Department points to its own regulations which require that insurance agents maintain records of original AIP applications. 31 Pa. Code §33.29(d). While the required records doctrine would appear to authorize inspections of such AIP applications without a warrant or subpoena, we observe that the scope of the intended search in the matter *sub judice* was clearly not limited to AIP applications.[7] Thus, the required records doctrine has limited application to the matter before this Court.

We, accordingly, conclude that the Department's attempted warrantless search of Petitioner's insurance records was not authorized by the Act and that Petitioner may not be subjected to sanctions for his actions in objecting to the search. We are, therefore, constrained to reverse the Commissioner's order in this matter.

## ORDER

The order of the Acting Insurance Commissioner in the above-captioned matter is hereby reversed.

---

[7] Moreover, the investigators' testimony indicates that the AIP applications maintained by Petitioner were offered for inspection on February 12. The investigators could not verify this allegation since they declined to review the proffered records.