555 A.2d 282

Holmes Constant Care Center, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 6, 1989, before Judges CRAIG and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Velma L. Jackson,* for petitioner.

*Jeffrey P. Schmoyer,* Assistant Counsel, with him, *Jason W. Manne,* Assistant Counsel, for respondent.

OPINION BY SENIOR JUDGE NARICK, March 3, 1989:

Holmes Constant Care Center (Petitioner) has petitioned for our review of an order of the Department of Public Welfare (DPW) denying its appeal from DPW's refusal to renew its license to operate a personal care boarding home.

Petitioner was originally licensed in October 1981 to operate a personal care home. Between 1981 and 1986, it was issued eight provisional licenses and one regular license.[1] On July 10, 1986, while operating under its

---

[1] Section 1008 of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 13, *as amended,* 62 P.S. §1008, provides for the issuance of provisional licenses "for a period of not more than six months which may be renewed three times." The pertinent regulations provide for the issuance of a "provisional certificate of compliance," which indicates "substantial, but not complete, compliance

fourth consecutive provisional license, Petitioner submitted an application for a regular license. In response to this application, DPW inspected the home on August 25, September 11 and October 30, 1986 and January 3 and February 23, 1987. Various violations of regulations, detailed below, were found to exist. The DPW inspector recommended that Petitioner be granted a regular license for a period of six months, rather than the typical one-year license. The central office in Harrisburg did not accept this recommendation, finding no authority to issue a six-month regular license. Accordingly, because Petitioner was not in compliance with the regulations, DPW denied its application and Petitioner appealed.

A hearing was held before a hearing examiner on May 21, 1987. On May 3, 1988, the hearing examiner recommended that the appeal be denied. The director of the Office of Hearings and Appeals (OHA) adopted the recommendation in its entirety on May 5, 1988 and Petitioner filed a timely appeal from that order.[2]

Petitioner presents two issues for our consideration which we shall address in the order presented: 1) whether the adjudication is supported by substantial evidence and

---

with program licensure or approval regulations." 55 Pa. Code §20.4. 55 Pa. Code §20.54(c) provides for a maximum of four consecutive provisional certificates of compliance. According to 55 Pa. Code §20.53, "a regular certificate of compliance is issued if the facility or agency is in compliance with applicable statutes, ordinances and regulations." We note that "licensure" is defined as "certification of compliance with program regulations" under 55 Pa. Code §20.4.

[2] Petitioner also filed a request for reconsideration, which the Secretary of DPW denied on July 20, 1988. Although Petitioner refers to this as the "final order" in this case, it is, as DPW admits, irrelevant to our disposition of this appeal since the Secretary's order was null and void, having been issued after the expiration of the thirty-day appeal period. *See Monsour Medical Center v. Department of Public Welfare*, 111 Pa. Commonwealth Ct. 359, 533 A.2d 1114 (1987).

2) whether DPW erred "in allowing testimony obtained through an illegal search of [Petitioner's] property to be used to support its finding." (Petitioner's Brief p. 8.)

Our scope of review requires us to affirm the adjudication unless we determine that Petitioner's constitutional rights have been violated, an error of law exists, or that necessary factual findings are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Colonial Manor Personal Care Boarding Home v. Department of Public Welfare*, 121 Pa. Commonwealth Ct. 506, 551 A.2d 347 (1988).

The hearing examiner made the following findings of fact pertinent to this appeal:

3. Because of the July 10, 1986 reapplication, the [DPW] conducted several inspections at the [Petitioner's] facility. A regular licensing inspection was conducted on August 25, 1986 (N.T. p. 7) and an unannounced follow-up inspection was conducted in response to a complaint on September 11, 1986. (N.T. p. 13.) Two more inspections were conducted on October 30, 1986 and January 3, 1987. (N.T. p. 18.) A final inspection was conducted on February 23, 1987. (N.T. p. 23.)

4. At the August 25, 1986 inspection the licensing inspector observed two residents ... to be non-mobile. Staff members had to support the residents under the arm and in large part supported their weight. There were stairs in the exit path from the home. (N.T. pp. 34, 35, 38.)

5. The [DPW] informed the [Petitioner] that [these residents] were unsuitable for a Personal Care Boarding Home and the [Petitioner] took steps to relocate them. (N.T. p. 147.)

6. Prior to the date the aforementioned residents left the [Petitioner's] facility, the [Petitioner] accepted two new residents. (N.T. pp.

147, 148.) The [DPW] discovered the overcapacity at the unannounced inspection on September 11, 1986.

7. On February 23, 1987 the inspector found that one medication was being administered to a resident even though it had expired, (N.T. p. 89), and the inspector found discontinued prescription medications in an unlocked cabinet in the kitchen where residents could have reached the medications. (N.T. pp. 116, 139.)

8. During the February 23, 1987 inspection the Physician's Certificate for one resident indicated that the resident was not appropriate for personal care. (N.T. p. 155.)

9. In addition to the violations concerning overcapacity, non-mobile residents, and the Physician's Statement, the inspector found numerous minor regulatory violations. On August 25, 1986 the inspector found that the kitchen was greasy, (N.T. pp. 39 and 40), the cane back on two chairs was ripped, a closet door had a hole in it, the toilet tank cover was missing, the sliding closet doors were off the track, several lamps were broken, the screeen [sic] in a bedroom had a large hole in it. (Exhibit C-2.) The inspector also found record keeping violations such as Physician's Certificates being out of date and records for two residents could not be located at all. (Exhibit C-2.)

10. The October 30, 1986 inspection revealed some repeat violations and some additional ones. The house was still found not to be clean, two patient records were still deficient and there were still problems with resident's lamps and closet doors.

11. On January 3, 1987 an inspection was conducted and all previous deficiencies had been corrected. (N.T. p. 127.)

12. Following the January 3, 1987 inspection the Regional Office in Pittsburgh recommended to their Harrisburg Office that a regular license be issued but that it be for six months, not for a full year. The Central Office refused to issue the regular license. (N.T. p. 127.)

13. The [DPW] made a final inspection on February 23, 1987. At that time they discovered the violations concerning medication mentioned in FF #7 as well as numerous minor violations including a greasy kitchen, a ripped chair, additional problems with lamps, a community towel in use and numerous record keeping deficiencies. (Exhibit C-4.)

14. By written notice dated March 4, 1987 the [DPW] informed the [Petitioner] that it was refusing to issue a license to operate a Personal Care Home.

Without indicating with specificity which findings of fact it challenges, Petitioner argues very generally that the findings as a whole are not supported by substantial evidence. As Petitioner notes, we have defined substantial evidence as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Colonial Manor; Murphy v. Department of Public Welfare*, 85 Pa. Commonwealth Ct. 23, 480 A.2d 382 (1984).

We have carefully reviewed all the evidence presented before the hearing examiner and must conclude that all of her findings are amply supported by the testimony of Thomas Gwillim, the DPW inspector who conducted the inspections of Petitioner's home. To be sure, the Petitioner presented evidence which, if believed,

could have refuted certain portions of Mr. Gwillim's testimony. The fact that conflicting evidence exists does not mean that there is a lack of substantial evidence to support the factual findings. *See Murphy*. The essence of Petitioner's argument is that we should accept its evidence over that of the DPW, which, of course, would require our reweighing the evidence and drawing our own credibility conclusions, which we decline to do. *Murphy; Colonial Gardens Nursing Home, Inc. v. Department of Health*, 34 Pa. Commonwealth Ct. 131, 382 A.2d 1273 (1978).

Although Petitioner has not directly challenged the hearing examiner's conclusions of law, it appears to be arguing that the denial of its license was erroneous because it was based upon *de minimis* violations which were always corrected. Suffice it to say that the regulations require that a facility be "in compliance" with applicable regulations in order to be granted a regular license. *See* n.1 above. While provisional licenses may be granted when a facility is in "substantial compliance" with the regulations, only four consecutive provisional licenses are authorized. *Id.* Correcting repeated violations and complying with regulations in the first instance without the necessity of correction are substantively distinct licensing requirements. According to 55 Pa. Code §20.53, a regular license may issue only in the latter case.

In its second argument, Petitioner attacks the evidentiary support for finding of fact #7 because it contends that the medications the DPW inspector found in the unlocked kitchen cabinet were the fruits of an illegal search. Petitioner cites no authority in support of its position that the protections of U.S. Const. amend. IV, which it discusses in quite general terms, apply where a licensed entity consents, either impliedly or expressly, to

periodic inspections of its premises.[3] Even if we were to assume that that were true, such a determination would not change the result here in light of the numerous unchallenged violations. The remaining violations themselves are sufficient to warrant refusal to issue a regular license under Section 1026(b)(1) of the Code, 62 P.S. §1026(b)(1).[4] *See, e.g., Pine Haven Residential Care Home v. Department of Public Welfare*, 99 Pa. Commonwealth Ct. 1, 512 A.2d 59 (1986).

For these reasons, we affirm the DPW's order.

## ORDER

AND NOW, this 3rd day of March, 1989, the order of the Department of Public Welfare in the above-captioned matter is hereby affirmed.

---

[3] We note that we have refused to extend such protection in other situations involving highly regulated industries. *See, e.g., Reiter v. Commonwealth*, 105 Pa. Commonwealth Ct. 623, 525 A.2d 446 (1987); *Peterson v. Pennsylvania State Horse Racing Commission*, 68 Pa. Commonwealth Ct. 353, 449 A.2d 774 (1982).

[4] That section provides that "[t]he department shall refuse to issue a license or shall revoke a license for ... violation of or non-compliance with the provisions of this act or of regulations pursuant thereto ... ." 62 P.S. §1026(b)(1).