[No. B130093. Second Dist., Div. Seven. May 10, 2000.]

JOSE DE LA CRUZ, Plaintiff and Respondent, v.
CHARLES QUACKENBUSH, as Insurance Commissioner, etc., Defendant
and Appellant.

**COUNSEL**

Bill Lockyer, Attorney General, David S. Chaney, Richard W. Bakke and Mark P. Richelson, Deputy Attorneys General, for Defendant and Appellant.

Raymond A. Greenberg for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—California's Insurance Commissioner appeals from a judgment holding he cannot revoke an insurance broker's license for refusing to permit a warrantless search of the books and records the broker is required by law to maintain. We affirm.

### FACTS AND PROCEEDINGS BELOW

The facts are not in dispute.

The California Department of Insurance received an anonymous complaint alleging certain insurance agencies in the Los Angeles area were selling insurance through unlicensed agents. The department began an inquiry which eventually led it to the office of Jose De La Cruz, a licensed broker.

A department investigator went to De La Cruz's office unannounced and asked to see a list of his employees and to review his trust account records. De La Cruz told the investigator the persons who maintained their records were not in the office, it being late on a Friday afternoon. The investigator told De La Cruz he would return the following week and to have the personnel and trust account records available for inspection.

Prior to returning to De La Cruz's office, the investigator received a telephone call from De La Cruz's attorney, who asked why the investigator

wanted to see his client's records. The investigator did not divulge his reasons. The attorney then told the investigator that under the circumstances De La Cruz would not provide access to the records based on the protections afforded him by California case law and the Fourth Amendment. The attorney went on to say if the investigator wanted to review the records he should make a written request and the attorney would decide whether to allow the inspection but, absent such a request, inspection would be denied.

The following week the investigator wrote to De La Cruz informing him an inspection of "all of your insured files and financial records" would take place at De La Cruz's office three weeks hence at 10:00 a.m. and that De La Cruz could have his attorney present if he so chose. The letter also stated failure to permit a review of the records could lead to revocation of De La Cruz's license.

The attorney representing De La Cruz responded with a letter to the inspector expressing the view the proposed examination of "all" his client's records without a warrant or administrative subpoena was unconstitutional. The letter concluded: "I suggest that you submit with specificity the exact records you wish to be produced, or else obtain an administrative subpoena [otherwise] you will not be permitted access to our client's premises[.]"

The investigator wrote back specifying the records he wished to inspect which included trust account records for the previous 12 months, and policy folders and financial records for the past five years, including "bank statements, checks, deposit slips, cash receipt books, journals . . . and all automated data processing systems."

On the appointed day and time the investigator arrived at De La Cruz's office and was denied access to the records.

As a result of De La Cruz's refusal to allow the investigator to examine his files, the Insurance Commissioner, Charles Quackenbush (Comissioner), brought proceedings to revoke De La Cruz's license to sell insurance. The matter was tried before an administrative law judge who ruled a warrantless inspection of an insurance broker's records was unconstitutional and therefore De La Cruz could not be disciplined for his failure to permit inspection of the requested records. The Commissioner rejected this decision and decided the matter himself, ruling the department's "warrantless inspection scheme is reasonable" under the Fourth Amendment and therefore De La Cruz was required to permit the inspection. His refusal to do so constituted good cause for revocation of his license.

De La Cruz filed a petition for administrative mandate in the superior court, alleging the Commissioner's decision to revoke his license constituted

a prejudicial abuse of discretion because it violated the Fourth Amendment's protection against unreasonable searches and seizures. The trial court agreed with De La Cruz and issued a writ of mandate directing the Commissioner to reinstate De La Cruz's license. The Commissioner appeals.

## DISCUSSION

I. *Insurance Code Section 1727 Authorizes the Warrantless Search of an Insurance Broker's Books And Records.*

We initially address De La Cruz's argument the proposed warrantless[1] search of his files exceeded the Commissioner's statutory authority. If this argument is correct we need not reach the constitutional issue because even if such a search is permissible under the Fourth Amendment, the Commissioner can only exercise the powers expressly or impliedly conferred by the Legislature. (*Morris v. Williams* (1967) 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697]; *Terry York Imports, Inc. v. Department of Motor Vehicles* (1987) 197 Cal.App.3d 307, 319 [242 Cal.Rptr. 790].)

At the time the Commissioner attempted a warrantless inspection of De La Cruz's records, Insurance Code section 1727 subdivision (a) provided: "The commissioner shall, after notice and hearing, promulgate reasonable rules and regulations specifying the manner and type of records to be maintained by those licensees acting as insurance agents and brokers and the location where the records shall be kept."

A reasonable argument could be made the Commissioner had no authority under this statute to promulgate regulations authorizing nonconsensual inspections of those records, at least absent an administrative warrant or subpoena.[2] The existence of numerous other statutes in which the Legislature authorized warrantless inspections would support that argument. (See discussion *post.*)

In 1999, however, the Legislature amended Insurance Code section 1727, subdivision (a) to provide the records referred to in the statute "shall be open

---

[1]Consistent with United States Supreme Court usage, the term "warrant" in this opinion refers not only to warrants in the traditional Fourth Amendment sense but also to administrative subpoenas which are the usual method by which an administrative agency obtains records from a private party. The right at stake is the right to a front-end or back-end judicial review of the reasonableness of the search. (*See v. City of Seattle* (1967) 387 U.S. 541, 544-545 [87 S.Ct. 1737, 1739-1740, 18 L.Ed.2d 943].)

[2]Insurance Code section 12924, subdivision (a) authorizes the Commissioner to "issue subpoenas and subpoenas duces tecum for witnesses to attend, testify and produce documents before him, on any subject touching insurance business or in aid of his duties."

to inspection or examination by the commissioner at all times, and the commissioner may at any time require the licensee to furnish any information maintained or required to be maintained in those records." (Stats. 1999, ch. 782, § 4.) The Legislature stated "the amendments to Section 1727 of the Insurance Code, made by Section 3 [*sic*] of this act do not constitute a change in, but are declaratory of, existing law."[3] Thus we read section 1727 of the Insurance Code as providing, at the time of the events in this action, the records of insurance agents and brokers were "open to inspection or examination by the commissioner at all times" and the commissioner could require the agent or broker to furnish any information required to be maintained in those records "at any time."

Courts have interpreted similar language in other statutes to authorize warrantless inspections. (See, e.g., *People v. Firstenberg* (1979) 92 Cal.App.3d 570, 579 [155 Cal.Rptr. 80] [construing Health & Saf. Code, § 1421, subd. (a): "Any duly authorized officer, employee, or agent of the state department may enter and inspect any long-term health care facility . . . at any time to enforce any provision of this chapter."]; *People v. Easley* (1979) 90 Cal.App.3d 440, 443 [153 Cal.Rptr. 396] [construing former version of Veh. Code, § 320, subd. (b): "The place of business shall be open to inspection of the premises, pertinent records, and vehicles by any peace officer during business hours." (Stats. 1984, ch. 1037, § 843, p. 4672.)]; *Miller v. Obledo* (1978) 79 Cal.App.3d 714, 716 [145 Cal.Rptr. 140] [construing former version of Welf. & Inst. Code § 14124.2: "The department during normal working hours may make any examination of the books and records of any provider pertaining to services rendered to any [Medi-Cal] beneficiary under this chapter . . . ." (Stats. 1977, ch. 1252, § 843, p. 4672.)].)

Thus, we are required to confront the question whether the proposed warrantless search of De La Cruz's insurance files violated his rights under the Fourth Amendment to the United States Constitution.

II. *The Insurance Industry and Insurance Brokers Are "Closely Regulated" Businesses for Purposes of Fourth Amendment Analysis.*

A. *Owners of "Closely Regulated" Businesses Have a Reduced Expectation of Privacy in Their Premises and Records.*

No one disputes the proposition "[t]he Warrant Clause of the Fourth Amendment protects commercial buildings as well as private homes" against

---

[3]The amendments to Insurance Code section 1727 are contained in section 4 of chapter 782, Statutes 1999, not section 3. The language added to section 1727 is exactly the same as the language deleted when the statute was previously amended in 1976.

unreasonable searches and seizures. (*Marshall v. Barlow's, Inc.* (1978) 436 U.S. 307, 311 [98 S.Ct. 1816, 1819, 56 L.Ed.2d 305] [tracing the Fourth Amendment to the experience of colonial merchants and businessmen].) Therefore, "unless some recognized exception to the warrant requirement applies," the Fourth Amendment would require a warrant or its equivalent to conduct the inspection sought in this case. (*Id.* at p. 313 [98 S.Ct. at p. 1820].)

■ The Commissioner urges us to apply an exception which has come to be known as the "closely regulated" business exception. This exception, most recently articulated in *New York v. Burger* (1987) 482 U.S. 691 [107 S.Ct. 2636, 96 L.Ed.2d 601], applies when a business is "closely" or "pervasively" regulated and the search is reasonable because there is a " 'substantial' government interest" underlying the inspection scheme, warrantless inspections are " 'necessary to further [the] regulatory scheme,' " and the inspection program " 'in terms of the certainty and regularity of its application, [provides] a constitutionally adequate substitute for a warrant.' " (*Id.* at pp. 702-703 [107 S.Ct. at p. 2644].) If all these criteria are met, a warrantless inspection of commercial premises is not unreasonable under the Fourth Amendment.

The rationale for the "closely regulated" business exception is that the owner or operator of such a business has a "reduced expectation of privacy" and, consequently, "the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a governmental search . . . have lessened application in this context." (*New York v. Burger, supra,* 482 U.S. at p. 702 [107 S.Ct. at p. 2643], citation omitted.) Therefore, "a warrantless inspection of a [closely regulated business] may well be reasonable within the meaning of the Fourth Amendment." (*Ibid.* [107 S.Ct. at p. 2644].)

B. *The Insurance Industry and Brokerage Business Are Closely Regulated Businesses.*

A closely or pervasively regulated business is one which is subject to such " 'close supervision and inspection' " its owner "cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." (*Donovan v. Dewey* (1981) 452 U.S. 594, 600 [101 S.Ct. 2534, 2538-2539, 69 L.Ed.2d 262].) The Supreme Court has taken a liberal view of what constitutes "close regulation," putting the teeth of the analysis in the reasonableness requirement instead. (*New York v. Burger, supra,* 482 U.S. at p. 702 [107 S.Ct. at pp. 2643-2644]; and see discussion *post.*) Thus, in *Burger,* the court held automobile junkyards are "closely regulated"

businesses in the State of New York because the operator must meet certain licensing requirements, obtain a license and pay a fee, maintain specified records, display his registration to the public and is subject to criminal penalties, revocation of his license or civil fines for failure to comply with these provisions. (*Id.* at pp. 704-705 [107 S.Ct. at pp. 2644-2645].) The court noted the duration of the particular regulatory scheme was also relevant but not determinative. (*Id.* at p. 705 [107 S.Ct. at p. 2645].)

Whether we focus on the insurance brokerage business in particular or the insurance industry in general, we are dealing here with a closely regulated business.

Clearly, in California the insurance brokerage business is closely regulated under the *Burger* test. Insurance agents must meet certain licensing requirements and obtain a license (Ins. Code, §§ 1631-1707.51), maintain specified records (Ins. Code, § 1727; Cal. Code Regs., tit. 10, §§ 2190.2-2190.6), and are subject to license revocation and civil fines for failure to comply with these provisions (Ins. Code, §§ 1708 et seq., 1737 et seq.).

Furthermore, the insurance brokerage business is a branch of the insurance industry which has been the subject of close regulation in California since the beginning of statehood. (Cf. *New York v. Burger, supra,* 482 U.S. at pp. 706-707 [107 S.Ct. at pp. 2645-2646] [noting automobile junkyards are akin to general junkyards and secondhand shops which have been closely regulated for many years].)

In 1850 the California Legislature adopted laws regulating insurance companies which specified the kinds of insurance they could offer and controlled the payment of dividends, prohibited loans to stockholders, required the filing of annual reports, prohibited the engagement in other trade and limited the amount of insurance on any one risk. In 1866 the Legislature created the Office of Insurance Commissioner, required all insurers operating in the state to make certain filings with the commissioner and qualify for a certificate of authority to do business and imposed conditions on doing business in the state. (Weinstock & Maloney, History and Development of Insurance Law in California; 42 West's Ann. Ins. Code (1972 ed.) pp. xxxvii-xl.) Public control over the insurance industry has continued into the modern era, the 1988 adoption of Proposition 103 requiring a rollback of automobile insurance rates and placing other limits on the insurance industry being just the latest example. (See *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 812-813 [258 Cal.Rptr. 161, 771 P.2d 1247].)

In the *Calfarm* case our Supreme Court observed "[i]nsurance . . . is a highly regulated industry." (*Calfarm Ins. Co. v. Deukmejian, supra,* 48 Cal.3d

at p. 830.) An executive department devoted entirely to that industry, five volumes of annotated statutes (see 42-43A West's Ann. Ins. Code), and a plethora of regulations (Cal. Code, Regs., tit. 10) make it difficult to argue with the high court's assessment.

De La Cruz does not argue the insurance industry in general or the insurance brokerage business in particular is not closely regulated in the *Burger* sense. Rather, he argues an inspection of his books and records without benefit of a warrant or subpoena is unreasonable. We address this contention below.

III. *The Search in This Case Was Unreasonable Even as to a Closely Regulated Business.*

In assessing the reasonableness of the search in this case we first address the Commissioner's contention De La Cruz could have no reasonable expectation of privacy in records he was required by law to maintain. After explaining why we reject that contention, we turn to the question whether the search satisfied the criteria for reasonableness set forth in *New York v. Burger, supra*, 482 U.S. 691. We conclude it did not.

A. *The Mere Fact the Commissioner Required De La Cruz to Maintain Certain Records Did Not Authorize the Commissioner to Search Those Records Without a Warrant.*

Relying on the so-called required-records exception to the Fifth Amendment privilege against self-incrimination, the Commissioner argues a warrantless search of De La Cruz's records was reasonable under the Fourth Amendment because De La Cruz "has no expectation in the privacy of the records described in the Commissioner's regulation [(Cal. Code Regs., tit. 10 § 2190.2 et seq.)] which he must maintain for immediate review as a condition of licensure."

The Commissioner cites as his primary authority for this argument *Shapiro v. United States* (1948) 335 U.S. 1 [68 S.Ct. 1375, 92 L.Ed. 1787]. In *Shapiro* the court sustained a conviction for violation of wartime price regulations based in part on evidence derived from the defendant's business records surrendered in compliance with an administrative subpoena. The court held Shapiro was not privileged to withhold his records because: "The record involved in the case at bar was a sales record required to be maintained under an appropriate regulation, its relevance to the lawful purpose of the Administrator is unquestioned, and the transaction which it recorded was one in which the petitioner could lawfully engage solely by

virtue of the license granted to him under the statute." (*Id.* at p. 35 [68 S.Ct. at p. 1393].)

Similarly, the Commissioner contends, the records involved in the present case were required to be maintained under appropriate regulations, were relevant to his duty to prevent and detect fraud, misrepresentation, incompetence and sharp practices and the transactions reflected in the records were those in which De La Cruz could lawfully engage solely by virtue of the license granted him by statute.

We reject this argument.

As we have already noted, the required-records exception applies to the privilege against self incrimination under the Fifth Amendment, not to the reasonableness of a search under the Fourth Amendment. (*Shapiro v. United States, supra,* 335 U.S. at p. 33 [68 S.Ct. at p. 1392]; and see *Craib v. Bulmash* (1989) 49 Cal.3d 475, 487 [261 Cal.Rptr. 686, 777 P.2d 1120].) The Commissioner has cited no California or federal case, nor have we found one, in which the mere fact the government required a business to maintain certain records was held to be a sufficient justification for the government to seize those records without a warrant or subpoena.[4] On the contrary, the seizures in *Shapiro* and *Craib* were made under the authority of subpoenas. (*Shapiro, supra,* 335 U.S. at p. 4 [68 S.Ct. at p. 1377]; *Craib, supra,* 49 Cal.3d at p. 479; see also *California Bankers Assn. v. Shultz* (1974) 416 U.S. 21, 52 [94 S.Ct. 1494, 1512-1513, 39 L.Ed.2d 812] [required records accessible only by "legal process"].)[5]

We perceive several reasons why the government's requirement records be maintained does not automatically make those records subject to a warrantless search. The most obvious reason is that applying the required-records exception to searches and seizures of business records would eviscerate the Fourth Amendment insofar as businesses are concerned. A state could conduct a warrantless search of any business records by simply requiring them to be maintained. Furthermore, we see no reason why records concededly private before the government ordered that they be maintained should be stripped of protection simply because the government now wants

---

[4]But see *Reiter v. Com., Ins. Dept.* (1987) 105 Pa. Commw. 623 [525 A.2d 446, 450]. No reported case has followed *Reiter* on this point and, for the reasons discussed below, we also decline to follow it.

[5]*U.S. v. Blocker* (5th Cir. 1997) 104 F.3d 720, cited by the Commissioner, is not on point. There the defendant was convicted of fraud based on evidence uncovered by a state insurance department auditor conducting a statutorily authorized audit of the defendant's insurance business. The court made no mention of the required-records exception and the defendant did not challenge the search of his records on Fourth Amendment grounds. (*Id.* at p. 727, & fn. 7.)

them kept for a certain time in a certain format. Finally, the fact records are required to be maintained by the government does not mean they are of interest only to the government. In many cases those records will be compiled for internal business reasons. As an Insurance Department supervisor conceded at the hearing in the present case, the records required to be maintained under the department's regulations are also necessary to maintain relationships with the insurance companies the broker represents and with the insured clients.

We conclude therefore that although De La Cruz may have "a reduced expectation of privacy" in his records (*New York v. Burger, supra*, 482 U.S. at p. 702 [107 S.Ct. at p. 2643]), his expectation has not been reduced to zero.

B. *The Warrantless Search in This Case Failed to Satisfy Any of Burger's Criteria of Reasonableness.*

As the Supreme Court pointed out in *Burger*, "even in the context of a pervasively regulated business, [a warrantless search] will be deemed reasonable only so long as three criteria are met." (*New York v. Burger, supra*, 482 U.S. at p. 702 [107 S.Ct. at p. 2644].) Those criteria require that a "substantial governmental interest" exists in the regulatory scheme under which the inspection is made, a warrantless inspection is necessary to further the regulatory scheme and the inspection program provides a constitutionally adequate substitute for a warrant. (*Id.* at pp. 702-703 [107 S.Ct. at pp. 2643-2644].) We examine each of these criteria below.

1. *The Commissioner's Interests in The Prevention and Detection of Fraud and Chicanery by Insurance Brokers Are Not Sufficient to Override the Brokers' Fourth Amendment Protections.*

Quoting *Robertson v. California* (1946) 328 U.S. 440, 447 [66 S.Ct. 1160, 1164, 90 L.Ed. 1366], the Commissioner argues inspection of an insurance broker's books and records serves a vital public interest in protecting insureds from "fraud, misrepresentation, incompetence and sharp practice" in insurance transactions. Our own Supreme Court, the Commissioner observes, has also recognized the need to afford the people of this state " 'security . . . in such insurance as they may choose to effect upon their property, and to protect them against fraudulent schemes of insurance, or deception by plausible inducements which may be held out for their patronage.' . . ." (*People v. United National Life Ins. Co.* (1967) 66 Cal.2d 577, 595 [58 Cal.Rptr. 599, 427 P.2d 199], citation omitted.) Moreover, he maintains, the fact "such dangers may exist, may even be widely prevalent in the absence of [regulations], is a matter of common knowledge and experience. And no argument is needed to show that these evils are most apt

to arise in connection with the activities of the less reliable and responsible insurers, *as well as insurance brokers or salesmen,* and vitally affect the public interest." (*Robertson v. California, supra,* 328 U.S. at p. 447 [66 S.Ct. at p. 1164], italics added.)

Yet, despite citing us to numerous cases in which the courts held explicitly or implicitly the insurance industry is a closely regulated business, the Commissioner is unable to point to any case in which the *Burger* criteria of reasonableness were found satisfied with respect to the inspection of a broker's insurance records.[6]

One reason for the absence of such a case, we suspect, is that a generalized concern about fraud committed by insurance brokers is not a substantial enough reason for dispensing with Fourth Amendment protections. Virtually all laws licensing businesses or professions were enacted at least in part to protect the public from dishonest or incompetent persons engaging in the licensed activity. If this was all that was needed to satisfy the substantial government interest criterion then the criterion would be meaningless because it would not screen out any regulatory scheme. (*Pinney v. Phillips* (1991) 230 Cal.App.3d 1570, 1585 [281 Cal.Rptr. 904] [refusing to apply closely-regulated business exception to licensed contractors].)

As the late Justice Hanson of this district pointed out in refusing to apply the closely-regulated business exception to retail car dealerships, industries falling within this exception "ordinarily share a common circumstance: they engage in transactions or sales of products which directly affect the public health and safety." (*Terry York Imports, Inc. v. Department of Motor Vehicles, supra,* 197 Cal.App.3d at p. 320.)[7]

On the other hand, in virtually every business or profession there are instances of fraud and incompetence. Surely the insurance business is no

[6]The Commissioner cites *Goldberg v. Barger* (1974) 37 Cal.App.3d 987 [112 Cal.Rptr. 827]; *Williams v. Insurance Commissioner* (1957) 149 Cal.App.2d 140 [308 P.2d 52]; *U.S. States v. Blocker, supra,* 104 F.3d 720; *United States v. Gordon* (2d Cir. 1981) 655 F.2d 478; *Attorney General v. Amer. Way Life Ins.* (1991) 186 Mich.App. 679 [465 N.W.2d 56]; *Szabo v. Insurance Com'r* (1980) 99 Mich.App. 596 [299 N.W.2d 364]; *Reiter v. Com., Ins. Dept., supra,* 525 A.2d 446; *Linick v. Employers Mut. Cas. Co.* (Tex.App. 1991) 822 S.W.2d 297; *Param Petroleum Corp. v. Commerce and Industry* (1997) 296 N.J.Super. 164 [686 A.2d 377]; *Business Data Services, Inc. v. Kosydar* (1975) 43 Ohio St.2d 43 [330 N.E.2d 671]; and *State v. Fishman* (1963) 2 Conn.Cir. 83 [194 A.2d 725]. None of these cases involved a Fourth Amendment challenge to the inspection of an insurance broker's records.

[7]See, for example, *New York v. Burger, supra,* 482 U.S. 691 (automobile junkyards); *Donovan v. Dewey, supra,* 452 U.S. 594 (mines); *United States v. Biswell* (1972) 406 U.S. 311 [92 S.Ct. 1593, 32 L.Ed.2d 87] (firearms dealers); *Colonnade Corp. v. United States* (1970) 397 U.S. 72 [90 S.Ct. 774, 25 L.Ed.2d 60] (liquor dealers); *People v. Doss* (1992) 4 Cal.App.4th 1585 [6 Cal.Rptr.2d 590] (pharmacy records of dangerous drugs); *Kim v. Dolch* (1985) 173 Cal.App.3d 736 [219 Cal.Rptr. 248] (massage parlors); *People v. Harbor Hut Restaurant* (1983) 147 Cal.App.3d 1151 [196 Cal.Rptr. 7] (wholesale fish dealers); *People v. Firstenberg, supra,* 92 Cal.App.3d 570 (nursing homes).

exception. But neither is the legal profession. Under the Commissioner's reasoning State Bar investigators should be permitted to conduct unannounced warrantless inspections of an attorney's mandatory continuing legal education records on the ground the mandatory continuing legal education program is a "consumer protection measure 'intended to enhance the competency of attorneys practicing law in this state.'" (*Warden v. State Bar* (1999) 21 Cal.4th 628, 634 [88 Cal.Rptr.2d 283, 982 P.2d 154].) Furthermore, notwithstanding the United States Supreme Court's view of insurance practices in California in 1946, we do not view insurance broker fraud or incompetence as a pervasive problem in the 21st century justifying abandonment of constitutional protections which have been rooted in our culture since the 18th.

### 2. *Warrantless Administrative Inspections Are Not Necessary to Further the Regulatory Scheme.*

Even if the need to detect and prevent fraud and incompetence were substantial governmental interests we are not convinced warrantless inspections are necessary to accomplish the regulatory objective. An Insurance Department supervisor testified at the administrative hearing that unannounced inspections of broker's records are necessary because: "[W]e want to make sure . . . the records are complete, that they are not altered in any way when they are reviewed. . . . [I]f we give them notice beforehand, for whatever reason, a list of items that we want to see, we don't know what's going to happen with that file or the records." The witness also explained effective dates on documents can be changed, signatures can be added to documents, and documents can be added to or removed from the files in the time it would take to enforce an administrative subpoena.

Again, the same rationale could be applied to virtually every licensed industry. Investigators always want to make sure they see intact original records. In any event, the languid pace of the De La Cruz investigation causes us to question just how important warrantless inspections are to the regulatory scheme. More than a month went by from the time the investigator first appeared at De La Cruz's office requesting to see his employment records to the final showdown when the investigator returned demanding to see all of De La Cruz's brokerage records and was refused. This delay was not attributable to De La Cruz but to the investigator. He originally told De La Cruz he would return the following week to inspect the records, but the following week, instead of attempting to conduct the inspection, he wrote telling De La Cruz he would conduct his inspection on a day nearly three weeks later. We find it difficult to square the need for immediate access to

records to avoid tampering with a three-week notice of an impending inspection.[8]

Moreover, the department supervisor admitted on cross-examination many of the documents required to be maintained under the regulations are also necessary to maintain relationships with insurance companies and the insureds and thus any alteration of the documents could have an adverse effect on the insurance broker's relationship with the companies the broker represents and with the broker's clients.

Furthermore, unlike the records of automobile junkyards or stone quarries, many of the records kept by an insurance broker exist in other files as well. The insurance companies themselves possess the applications and underwriting information, the insureds have the policies, and the banks have bank records. Thus, even if the broker could alter his own records in a way that could avoid detection, it does not seem plausible he could alter the records held by an insurance company, an insured or a bank.

Finally, as the court noted in *Marshall v. Barlow's, Inc.*, the great majority of businesses can be expected in normal course to consent to inspection without advance notice. (436 U.S. at p. 316 [98 S.Ct. at p. 1822].) The Commissioner does not claim there is a widespread pattern of refusal among insurance brokers to produce documents on demand. Indeed, the present case appears to be one of first impression.[9]

### 3. Neither Insurance Code Section 1727 nor the Commissioner's Regulations Provide a Constitutionally Adequate Substitute for a Warrant.

Because a search without a warrant or, in this case, an administrative subpoena, provides the person whose records are searched no opportunity for a front-end or back-end judicial review of the reasonableness of the demand for records[10] the regulatory scheme must provide "a 'constitutionally adequate substitute for a warrant.' " (*New York v. Burger*, *supra*, 482 U.S. at p. 711 [107 S.Ct. at p. 2648], quoting *Donovan v. Dewey*, *supra*, 452 U.S. at p. 603 [101 S.Ct. at p. 2540].)

---

[8]Inspection of insurance brokers' records is not covered by the statutes providing for the issuance of administrative warrants. (Code Civ. Proc., § 1822.50 et seq.) Code of Civil Procedure section 1822.50 provides for inspections "relating to building, fire, safety, plumbing, electrical, health, labor, or zoning." If the Commissioner believes record tampering by brokers is a serious problem he should seek an amendment to the statute to give him the authority to seek an administrative warrant.

[9]We are aware of no evidence that after the Supreme Court's opinion in *Marshall* employers engaged in widespread disobedience of Occupational Safety and Health Administration inspection requests. (See *Marshall v. Barlow's Inc.*, *supra*, 436 U.S. at p. 316, fn. 11 [98 S.Ct. at p. 1822].)

[10]*See v. City of Seattle*, *supra*, 387 U.S. at pages 544-545 [87 S.Ct. at pages 1739-1740]; *Pinney v. Phillips*, *supra*, 230 Cal.App.3d at pages 1587-1588.

In order to satisfy the warrant substitute requirement, "the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial business that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." (*New York v. Burger, supra*, 482 U.S. at p. 703 [107 S.Ct. at p. 2644].) To have a "properly defined scope" the statute "must be 'sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.'" (*Ibid.*, quoting *Donovan v. Dewey, supra*, 452 U.S. at p. 600 [101 S.Ct. at pp. 2538-2539].) In addition, the statute "must be 'carefully limited in time, place, and scope.'" (*Ibid.*, quoting *United States v. Biswell, supra*, 406 U.S. at p. 315 [92 S.Ct. at p. 1596].)

The applicable statute here, Insurance Code section 1727, merely authorizes the Commissioner to provide by regulations the manner and type of records to be maintained by insurance brokers and permits the Commissioner to require the broker to furnish "any" information contained in those records "at any time." The regulations themselves (Cal. Code Regs., tit. 10, § 2190.1 et seq.) require the broker to maintain every conceivable record which could be generated in an insurance brokerage business.

Although the statute and the Commissioner's regulations are part of a broad statutory scheme of insurance regulation, they do not even marginally implement a defined, routine inspection program. On the contrary, the evidence at the administrative hearing showed inspections are so "random, infrequent, or unpredictable that a [broker], for all practical purposes, has no real expectation that his property will from time to time be inspected by government officials" (*Donovan v. Dewey, supra*, 452 U.S. at p. 599 [101 S.Ct. at p. 2538]) and is left "to wonder about the purposes of the inspector or the limits of his task" (*United States v. Biswell, supra*, 406 U.S. at p. 316 [92 S.Ct. at p. 1596]).

The present case, it will be recalled, began with an inspector's request to see Mr. De La Cruz's list of employees and his trust account records. The inspector later escalated this request to "all . . . insured files and financial records" and finally to trust account records for the previous 12 months and "bank statements, checks, deposit slips, cash receipt books, journals, signature authority card(s) for each account, all automated data processing systems, all policy folders, for the past five years, including the applications, declarations, binders, quotation sheets, correspondence received, copies of correspondence, and any other record to describe the transaction." The evidence reveals the bureaucratic version of military "mission creep," instead of a scheme "specifically tailored to address" the Commissioner's

stated concerns. (*Donovan v. Dewey*, *supra*, 452 U.S. at p. 603 [101 S.Ct. at p. 2540].)

Furthermore, the evidence shows inspectors have virtually unbridled discretion as to whom and what to search. (Cf. *Marshall v. Barlow's Inc.*, *supra*, 436 U.S. at p. 323 [98 S.Ct. at pp. 1825-1826] [striking down OSHA warrantless inspection scheme].) Nothing in the regulations calls for regular or periodic inspections. (Cf. *New York v. Burger*, *supra*, 482 U.S. at p. 711 [107 S.Ct. at p. 2648]; *Donovan v. Dewey*, *supra*, 452 U.S. at pp. 603-604 [101 S.Ct. at pp. 2540-2541].) The inspection in the present case was triggered by an anonymous complaint. The inspector testified there is nothing from the Commissioner, either in writing or through training, which limits his discretion in deciding what documents to request or the time span of the request. These decisions, he stated, are a "judgment call" for the inspector.

We find the regulatory scheme at issue does not provide an adequate substitute for a warrant because it has neither a "properly defined scope" nor a "limit [on] the discretion of the inspecting officers." (*New York v. Burger*, *supra*, 482 U.S. at p. 703 [107 S.Ct. at p. 2644].)

For the reasons explained above, we conclude the Commissioner's warrantless inspection scheme cannot withstand constitutional scrutiny under the Fourth Amendment because it does not meet any of the three requirements for dispensing with a warrant set out in *New York v. Burger*. Accordingly, the Commissioner exceeded his authority in revoking De La Cruz's brokerage license for refusing to surrender the requested documents. (Cf. *Pinney v. Phillips*, *supra*, 230 Cal.App.3d at p. 1589.)

## Disposition

The judgment is affirmed. De La Cruz to recover his costs on appeal.

Lillie, P. J., and Neal, J., concurred.