[Crim. No. 32740. Second Dist., Div. Five. Mar. 14, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
ELLIOUT LEE EASLEY, Defendant and Appellant.

## COUNSEL

Walter L. Gordon III for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline and Kathleen M. Crain, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—A four-count information charged defendant with grand theft auto (Pen. Code, § 487, subd. 3), unlawful taking of an automobile (Veh. Code, § 10851), receiving stolen property (Pen. Code, § 496), and willful injury to insured property with intent to defraud (Pen. Code, § 548). It was stipulated that a motion to suppress evidence pursuant to Penal Code section 1538.5 would be submitted on the evidence presented at the preliminary hearing. After the motion was denied, defendant pleaded guilty to the receiving count. On motion of the People the other counts were dismissed in the interests of justice. Defendant was placed on

probation for a three-year period on various conditions, including that he spend the first sixty days in county jail and pay a fine of $500. Plaintiff appeals from the judgment. (Pen. Code, § 1538.5, subd. (m).)

FACTS

On December 7, 1977, Deputy Sheriff Jack Boggio learned that a 1977 Cadillac parked on 66th Street had been sold for salvage as a wrecked car. A check with the Department of Motor Vehicles revealed that the car had been sold to BFC Auto Dismantling at 10919 South Central Avenue, Los Angeles. Boggio went to that address and found a lot surrounded by a block wall. The "shells" of three automobiles were on the lot and two telephone numbers were painted on the wall. Boggio determined that one of the telephone numbers was listed to defendant at 10826 South Central Avenue—the location immediately across the street from the lot.

Boggio went to that location, which appeared to be a former gas station which had been converted into an auto repair shop. Defendant was in the shop working on a 1977 Cadillac Seville. Boggio asked defendant about the 1977 Cadillac that belonged to BFC Auto Dismantlers and defendant replied that the car was one of five salvaged Cadillacs he had purchased and that his wife was currently driving it. Defendant then produced a dismantler's "acquisition book"[1] from the rear seat of the Cadillac he was working on. Boggio asked if that particular car had been entered into the book. Defendant said that he had had the car for about a week but had only received the "paperwork" on it the day before and had not yet made the entry.

Boggio then proceeded to inspect the other vehicles in the shop to see if they had been entered in the book. He discovered a 1976 Cadillac Seville which had been "all cut up, the rear clip of the body and engine and transmission with the numbers ground out of it." Inside a 1969 Ford van, Boggio discovered a number of Cadillac parts, including seats from a 1976 Cadillac Seville which had been stolen on November 28, 1977. Boggio also found two Buick Skyhawks, one of which had been dismantled. Defendant told Boggio that the dismantled Buick was his car but that its engine had blown up.[2]

---

[1]The full title of the book was "Dismantler's Book of Notice of Acquisition and Report of Vehicle to be Dismantled or Wrecked." Deputy Boggio testified that when a dismantler acquires a vehicle he must enter it into the book and within five days must send a carbon copy of the entry to the Department of Motor Vehicles. (Veh. Code, § 11520.)

[2]The dismantled Buick was relevant to count 4, which charged defendant with wilfully injuring insured property with intent to defraud the insurer. (Pen. Code, § 548.)

## DISCUSSION

█ Defendant claims that the warrantless inspection of the vehicles in his shop was an unreasonable search violative of the Fourth Amendment of the federal Constitution. The People counter with the claim that the inspection was authorized by statute and falls within the exception to the warrant requirement recognized where the premises inspected house a "pervasively regulated business. . . ." (*United States* v. *Biswell* (1972) 406 U.S. 311, 316 [32 L.Ed.2d 87, 92, 92 S.Ct. 1593].) We conclude that the People's position is correct.

Vehicle Code section 320 provides, in relevant part: " 'Established place of business' is a place actually occupied either continuously or at regular periods by:

"·  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(b) An automobile dismantler where the books and records pertinent to the type of business being conducted are kept. The place of business shall have an office and a dismantling area located in a zone properly zoned for that purpose by the city, county, or city and county. . . .

"A licensee issued an occupational license by the department and conducting more than one type of business from an establishment, as herein defined, shall provide a clear physical division between the types of business involving vehicles or their component parts. The place of business shall be open to inspection of the premises, pertinent records, and vehicles by any peace officer during business hours." The inspection provisions in the last sentence of section 320 have been held to be applicable only "if there is more than one type of business at the establishment . . . ." (*Addison* v. *Department of Motor Vehicles* (1977) 69 Cal.App.3d 486, 496 [138 Cal.Rptr. 185].)

The evidence presented below reasonably supports the conclusion that there were two types of businesses "involving vehicles or their component parts" being conducted on the premises inspected by Deputy Boggio: an auto repair business and a dismantling business. Initially, when Boggio went to the registered address of BFC Auto Dismantlers, he found only a lot with three auto shells on it. The telephone number at that location directed him to the business across the street, which he described as appearing to be an auto repair shop. Indeed, when he entered the shop he discovered defendant working on a Cadillac which he was "restoring."

However, when questioned, defendant represented himself as a dismantler who had bought five Cadillacs for purposes of dismantling. He then produced the dismantler's acquisition book from the car he was working on and indicated that that car was one he had obtained for purposes of dismantling. Under all the circumstances, Boggio could reasonably have concluded that defendant was carrying on both a dismantling business and an auto repair business at the same location and that the inspection of the vehicles in the premises was therefore authorized by Vehicle Code section 320, subdivision (b).

Nevertheless, defendant argues that the search was invalid because it was not based on probable cause. For this proposition, he relies primarily on *People* v. *Franklin* (1968) 261 Cal.App.2d 703 [68 Cal.Rptr. 231]. *Franklin* is inapposite. There we were concerned with the scope of authority of Vehicle Code section 2805, which specifically authorizes members of the California Highway Patrol to inspect vehicles for proper registration. We construed the language of that statute strictly and determined that it did not authorize investigative searches for registration by police officers and deputy sheriffs generally. (*Id.,* at p. 707; but see *People* v. *Brown* (1970) 4 Cal.App.3d 382, 387 [84 Cal.Rptr. 390], in which the court approved a search for vehicle registration by police officers pursuant to section 2805.) In the present case, however, the investigative search was authorized by section 320, subdivision (b), which allows "inspection . . . by any peace officer . . . ." The statute does not contemplate the necessity for probable cause to believe that evidence of a crime is present as a prerequisite to such inspection. (Cf. *Camara* v. *Municipal Court* (1967) 387 U.S. 523, 538-539 [18 L.Ed.2d 930, 940-941, 87 S.Ct. 1727].)

Finally, defendant claims that the sheriff was required to procure a warrant by the recent decision of *Marshall* v. *Barlow's Inc.* (1978) 436 U.S. 307 [56 L.Ed.2d 305, 98 S.Ct. 1816]. In *Marshall,* the Supreme Court invalidated as violative of the Fourth Amendment a section of the federal Occupational Safety and Health Act of 1970 which empowered agents of the Secretary of Labor to inspect the facilities of businesses engaged in interstate commerce in order to uncover safety and health hazards. However, the court at the same time reaffirmed earlier cases which had recognized an exception to the warrant requirement for "pervasively regulated business[es]" such as the firearms industry (*United States* v. *Biswell, supra,* 406 U.S. at p. 316 [32 L.Ed.2d at p. 92]) and the liquor industry (*Colonnade Corp.* v. *United States* (1970) 397 U.S. 72, 76 [25

L.Ed.2d 60, 64, 90 S.Ct. 774]). (*Marshall* v. *Barlow's, Inc., supra,* at p. 313 [56 L.Ed.2d at pp. 311-312].)

The business involved here clearly falls within the exception carved out in *Biswell* and *Colonnade.* As the court stated in *People* v. *Grey* (1972) 23 Cal.App.3d 456, 461 [100 Cal.Rptr. 245], ". . . it is a matter of which we may take judicial knowledge that, while most establishments engaged in repairing vehicles, dismantling vehicles or selling used vehicles are honestly conducted, that kind of business is frequently utilized as a 'front' by persons engaged in the very kind of illegal business herein involved. Examination of the Vehicle Code discloses elaborate provisions for the registration and licensing of such businesses, designed to segregate the honest businessman from the thief and the fence.[5] . . . [Therefore,] we are inclined to hold that a state may impose on the licensing of a business, so fraught with public danger, a requirement that its premises be open to orderly inspections. [Fn. 6 omitted.]"

We conclude that the warrantless search did not violate the Fourth Amendment and that the motion to suppress was therefore properly denied.

The judgment of conviction (order granting probation) is affirmed.

Stephens, J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 10, 1979.

---

"[5]Consult, inter alia: Vehicle Code, sections 10650 et seq., 11500 et seq., 11701."