STATE of Minnesota, Respondent,

v.

Douglas Allen DAHMS, Appellant.

No. 52071.

Supreme Court of Minnesota.

Sept. 25, 1981.

Rehearing Denied Oct. 29, 1981.

Douglas W. Thomson and Robert D. Goodell, St. Paul, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and Richard D. Hodsdon, Sp. Asst. Attys. Gen., Arvid Wendland, County Atty., Blue Earth, for respondent.

SCOTT, Justice.

Defendant was found guilty by a district court jury of six counts of receiving or concealing stolen property, twelve counts of possessing or selling property with an altered or removed serial number, and two counts of theft for transferring the owner's property without consent. Minn.Stat. §§ 609.52, subds. 2(1), 2(11), and 3(2) and 609.53, subd. 1(1) (1980). The jury acquitted him of two counts of possessing or selling property with an altered or removed serial number. The trial court sentenced defendant to a limited maximum term of 5 years in prison. On this appeal from judgment of conviction, defendant contends that all but three of his convictions must be reversed outright for a number of reasons, including illegal search and seizure, improper admission of hearsay in violation of both Minn.R.Evid. 803(6) and the confrontation clause, and insufficiency of evidence.

The evidence indicated that in early February 1980 a man wanting to rebuild a wrecked pickup truck bought a pickup cab, box and front-end clip from defendant's salvage business for $2,575 and that, when he got the property home, he discovered that the vehicle identification numbers had been removed. After discovering a credit card receipt in the cab, he contacted authorities, who learned that the parts belonged to the person named in the receipt, an Illinois man, who had reported his truck stolen.

On March 3 officers obtained a warrant to search defendant's storage yard for a number of items including vehicle identification number plates and other parts from the stolen truck in question. As they were looking for the parts in question, they found numerous other vehicle parts which did not have vehicle identification numbers or federal safety stickers and numerous pickup parts which seemed to be in unusually good shape. They also found part of the frame they were looking for.

They terminated the search and used the information they obtained in the course of the search to obtain a second search warrant. Ultimately, the officers obtained a total of five warrants, execution of which resulted in the seizure of a large number of stolen truck parts.

This prosecution resulted.

■ 1. Defendant's first contention is that the authorities exceeded the scope of the first warrant by examining a number of truck parts which they had no reason to believe were the parts listed in the warrant and that all the subsequent warrants were the product of that illegality. He argues that all the truck parts, etc., seized should have been suppressed except those covered by three convictions (counts numbered 3–2, 10–6 and 11–6).

Cases relevant to this precise issue include *State v. Smith*, 261 N.W.2d 349 (Minn. 1977), and cases cited in section one of that opinion. Under this line of cases, if the officers did not have reason to believe that the parts they examined might be the parts listed in the warrant, then they had no right to examine those parts unless it was immediately apparent to them, without examining them first, that the parts, while not the parts listed in the warrant, were stolen. Applying this test, we hold that the trial court did not err in denying the motion to suppress. The testimony at the omnibus hearing indicates that the officers executing the warrant were looking for the listed

property when they discovered other parts which it was readily apparent were stolen. At this point, they prudently terminated the search and sought another warrant.

Beyond this, there is doubt whether we even have to rely on the *Smith* line of cases because here the premises being searched were commercial premises apparently open to the public. If the public was free to browse through the salvage yard, which covered around 10 acres, then defendant had no reasonable expectation of privacy in the yard and the police, during normal business hours, would have been free to go on the premises without a warrant. *See Delay v. State,* 563 S.W.2d 905 (Crim.App.Tenn. 1977), *cert. denied,* 563 S.W.2d 905 (Tenn. 1978), and 1 W. LaFave, Search and Seizure, § 2.4(b) (1978).

■ 2. Defendant's next contention is that his convictions of four counts (6–4, 8–5, 12–7, and 14–8) must be reversed because the evidence used to prove the property listed in these counts stolen was hearsay evidence improperly admitted in violation of Minn.R.Evid. 803(6) and the confrontation clause. Defendant argues that without this evidence, the evidence was insufficient to sustain those convictions.

The state in its brief does not make any strong argument in defense of the admission of the hearsay evidence—Chicago police reports indicating that the property in question was stolen—but contends that the evidence at worst was harmless error and that the four convictions should be sustained because there was other evidence that the property was stolen. The other evidence was (a) unobjected to documentary evidence that salvage titles, which are issued to the insurer after it pays a claim for a lost or stolen vehicle, had been issued for the four vehicles in question, and (b) physical evidence that the ignition lock had been pulled on one of the vehicles.

Rule 803(6) was not intended to change the decisions of this court in *State v. Wiley,* 295 Minn. 411, 205 N.W.2d 667 (1973), *State v. Matousek,* 287 Minn. 344, 178 N.W.2d 604 (1970), and *City of Fairmont v. Sjostrom,* 280 Minn. 87, 157 N.W.2d 849 (1968), cases which support defendant's contention that evidence of this sort cannot be admitted under the business-records exception to prove an element of a crime. 11 P. Thompson, Minnesota Practice, § 803.06, at 369 (1979). In our case, the only exception would be if there were independent indices of trustworthiness associated with the hearsay statements by the people who made the reports of the stolen vehicles. *Id.*

Since it is not unheard of for people to agree to have their cars stolen or torched so that they can collect the insurance, we believe the approach followed in the prior Minnesota cases must be followed in this case. Following this approach, we hold that the evidence in question was improperly admitted and that without this evidence, the evidence to support the convictions of the counts in question was legally insufficient.

3. The other claims are all claims of insufficiency of evidence.

■ (a) Most of these claims relate to the issue of value. Such a claim is made with respect to conviction of counts 5–3, 6–4, 7–4, 8–5, 10–6, 12–7, 14–8, 15–8, 16–10, 17–11, 18–12, 19–13, 20–14, 21–15, and 22–16.

The state concedes that the evidence of value of more than $2,500 was insufficient with respect to count 10–6 and therefore there is no question but that that conviction should be reduced to a conviction based on a value of only over $150, not over $2,500.

■ As to the others, the state concedes that there was little or no direct evidence of value but argues that the circumstantial evidence was sufficient. Specifically, as to counts 5–3, 18–12, 19–13, 20–14, and 21–15, all vehicle frames, the jury could infer the value of each of the frames from evidence in the record. Thus, there was evidence that the value of a pickup frame and engine together was equivalent to the value of a rebuilt Trans-Am automobile, certainly well over the $150 limit in question for each of the convictions. Although, there was evidence

that a frame is worth $1 to $2 per 100 pounds as scrap, these were not scrap frames but undamaged, relatively new frames which were reuseable in rebuilding trucks.

As to the remaining counts challenged as to value—6–4, 7–4, 8–5, 10–6, 12–7, 14–18, 15–8, 16–10, 17–11, and 22–16—there was evidence that defendant himself had paid more than $150 for items either equivalent in value or worth less.

■ (b) Defendant's other claims of insufficiency relate to counts 4–2 and 5–3, defendant contending that the evidence was insufficient to show knowledge. Looking at defendant's possession of this property in the context of all the evidence against him, it is clear that the jury was justified in concluding that the knowledge element had been met. *In re Welfare of C. D. L.*, 306 N.W.2d 819 (Minn.1981); *State v. Boykin*, 285 Minn. 276, 172 N.W.2d 754 (1969).

In conclusion, we reverse defendant's convictions of counts 6–4, 8–5, 12–7 and 14–8, we reduce the conviction for count 10–6 and we affirm the other convictions. Although the trial court may well conclude that the sentence it originally imposed on defendant is still appropriate, resentencing is technically required.

Reversed in part; remanded for resentencing.