[No. B004791. Second Dist., Div. Seven. Mar. 21, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY DOTY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to rules 976 and 976.1 of the California Rules of Court, part III is not certified for publication.

**COUNSEL**

Tony L. Cogliandro for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Katz and Alison L. Braun, Deputies Attorney General, for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—This is an appeal challenging a conviction for violating Penal Code section 496—receiving stolen property. The appellant raises two central issues on appeal. First, did the trial court err in denying the appellant's Penal Code section 1538.5 motion to suppress physical evidence and statements made by the appellant. Second, did the police err when they failed to give the appellant *Miranda* warnings at the scene of the crime. Because we find no error, we affirm.

### I. FACTS AND PROCEEDINGS BELOW

On September 1, 1983, Officer Michael Keller of the Los Angeles Police Department received a telephone call from an unidentified informant. The informant told him there was a stolen Camaro at 1021 Leeds Avenue which had been stripped. He also told the officer the parts could be found at Norm's Auto Wrecking. The officer went to the address at Leeds Avenue accompanied by Officer Juan Villanueva. At this address, the officers discovered a black 1977 Camaro. It had been stripped of its engine, transmission, doors, fenders, bumpers, windshield, steering column, identification, and license plates.

The officers called a tow service to pick up the car and then drove to Norm's. When they arrived at Norm's, the business was open. They entered the business and identified themselves to the appellant and his brother.

Officer Keller stated they were there to conduct a [Vehicle Code section] 2805 inspection in search of Camaro parts.[1] Within 10 feet after entering the yard, Officer Villanueva observed black quarter panels for a Camaro body. The panels had been cut either by cutters or with a torch. They had not been removed by the nuts and bolts. The officer immediately associated these panels with the Camaro they had just seen since the panels were cut up in the same way.

The officers proceeded to walk through the yard looking for Camaro parts. They ultimately seized two fenders, a windshield, two quarter panels, a steering column, two bumpers, a left door, and a gas tank. The items were either marked with yellow paint which said "77 Camaro" or appeared to come from the shell the officers had just examined. The parts were removed outside of the yard to the street. The appellant accompanied the officers at times during their search and pointed out some of the Camaro parts.

While Officer Villanueva was completing a report on the seized property, he asked the appellant for his name, home address, business address, and date of birth. During this conversation, the appellant told the officer he had moved the Camaro to the Leeds address himself. He stated the Camaro had been parked in front of Norm's when he arrived that morning. He also told Officer Keller the automobile had been brought to Norm's by an individual named Hank. Hank had owed him $300 and brought the car to him as payment.

Officer Keller performed a latent print investigation on the items. While he was attempting to take the fingerprint lifts, the appellant approached him and told him any prints he might find were his since he dismantled the car.

The Camaro parts and body were transported to the Seventh Street Garage. Officer Keller examined the car the next day and discovered the secondary identification number. He also determined the car had been stolen.

The appellant was arrested on September 7, 1983, and in an information was charged with violating Penal Code section 496 (receiving stolen property).

---

[1] Hereinafter all references are to the Vehicle Code unless otherwise indicated.

On October 20, 1983, the appellant filed a motion to suppress evidence pursuant to Penal Code section 1538.5. He sought the suppression of all tangible evidence seized at Norm's and all statements made by the appellant. The motion was renewed on January 12, 1984, and argument was heard on February 13, 1984.

At the hearing on the motion, the appellant essentially argued the officers entered Norm's for the specific purpose of locating *parts* from the dismantled vehicle not the vehicle itself. They did not have a warrant for this search. Instead the officers relied on section 2805. However, section 2805 only authorized warrantless entry for the purpose of determining the registration of *vehicles* within the premises. Thus, the search was unauthorized, and the evidence gathered as a result should be suppressed. Respondent countered by arguing section 2805 indeed authorized the type of search in question. The People urged section 2805 empowered police officers to inspect any vehicle of the type required to be registered under the code. The fact the vehicle had recently been taken apart was inconsequential. The officers were not limited to merely investigating registration.

The trial court denied appellant's motion.

After a jury trial, the appellant was found guilty of the charges. The appellant was subsequently granted probation for a period of three years on various terms and conditions.

On March 30, 1984, the appellant filed a timely notice of appeal challenging the denial of his motion to suppress evidence pursuant to Penal Code section 1538.5. He also challenges the failure of the officers to give *Miranda* warnings during their investigation at Norm's.

II. THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE

Appellant argues, as he argued at the hearing on his motion to suppress, that section 2805 did not authorize the warrantless search conducted by the officers at Norm's Auto Wrecking and thus all evidence seized as a result of this search was seized in violation of the Fourth Amendment and should be suppressed. While we agree section 2805 did not authorize the officers' conduct, we still find the search did not violate appellant's Fourth Amendment rights.

At the time of the challenged search, section 2805 provided in relevant part: "(a) For the purpose of locating stolen vehicles, . . . a member

of a city police department or county sheriff's office whose primary responsibility is to conduct vehicle theft investigations, may inspect any vehicle of a type required to be registered under this code on a highway or in any public garage, repair shop, parking lot, new or used car lot, automobile dismantler's lot, vehicle shredding facility, vehicle leasing or rental lot, vehicle equipment rental yard, vehicle salvage pool, or other similar establishment, and may inspect the title or registration of vehicles, in order to establish the rightful ownership or possession of the vehicle." Based on a literal reading of the statute, it would appear only to authorize the inspection, etc. of vehicles, not the component parts of a vehicle.

Although it could be argued this is an overly technical reading of the statute, the Legislature itself recognized the statute's deficiency. Thus, effective January 1, 1984, this code provision was amended. It now provides the above designated law enforcement officers can inspect not only vehicles of a type required to be registered under this code but also *any identifiable vehicle component thereof.* Furthermore, the Legislative Counsel's Digest explains the reason for this amendment. Prior to this recent amendment, designated officers could inspect vehicles to determine rightful ownership or possession. However, "[t]his bill *would expand* the purposes for which these inspections may be made *to include* determining rightful ownership or possession of identifiable vehicle components, as defined." (Italics added.) (Stats. 1983, ch. 1017, § 1.)

It is apparent from a reading of the pre-1984 statute, the 1984 amended statute, and the legislative history, the police officers were not authorized under the code provision in effect in September 1983 to conduct the type of search they conducted.[2] *People* v. *Grey* (1972) 23 Cal.App.3d 456 [100 Cal.Rptr. 245] and *People* v. *Easley* (1979) 90 Cal.App.3d 440 [153 Cal.Rptr. 396], cert. den. (1979) 444 U.S. 899 [62 L.Ed.2d 135, 100 S.Ct. 208], cited by the respondent, do not support a contrary interpretation. In *Grey,* although the court indeed rejected a challenge to a search conducted at the defendant's business pursuant to section 2805, the opinion does not

---

[2]As additional support for this position, the appellant cites *Lewis* v. *McMasters* (9th Cir. 1981) 663 F.2d 954. In that case, law enforcement officers searched an automobile dismantling yard owned by the appellant pursuant to section 2805. During this search, the officers seized a steel drum, which later upon opening, was found to contain burned title documents and a vehicle identification number of a stolen vehicle. Criminal charges were brought. After being acquitted on the charges, the appellants filed a suit against the officers for damages arising from the allegedly illegal search and seizure. The trial court dismissed the suit, finding section 2805 authorized the challenged action. The appellate court reversed. As the court stated "Section 2805 does not give law enforcement officers authority to conduct general searches of business premises. . . . [¶] A constrained interpretation of section 2805 is mandated by the United States Supreme Court cases that have recognized a limited exception to the Fourth Amendment warrant requirement for inspections of 'pervasively regulated businesses.'" (*Lewis* v. *McMasters, supra,* 663 F.2d at p. 955.)

discuss the particular evidence sought at the business, the scope of the search actually conducted or the evidence actually seized (*People* v. *Grey, supra,* 23 Cal.App.3d at p. 460) while in *Easley,* a deputy sheriff went to an auto repair shop and inspected *vehicles* in the shop. (*People* v. *Easley, supra,* 90 Cal.App.3d at p. 442.)[3]

 Even though we find the officers' search was not authorized via Vehicle Code section 2805, as discussed below, the warrantless entry was still proper.

 The rule that warrantless searches are generally unreasonable applies to commercial premises as well as homes. (*Camara* v. *Municipal Court* (1967) 387 U.S. 523, 528-529 [18 L.Ed.2d 930, 935-936, 87 S.Ct. 1727]; *See* v. *City of Seattle* (1967) 387 U.S. 541, 543 [18 L.Ed.2d 943, 946, 87 S.Ct. 1737].) However, this rule does not apply to searches conducted in any portion of a commercial premise which is open to the public. (*See* v. *City of Seattle, supra,* 387 U.S. at p. 545 [18 L.Ed.2d at p. 947]; *Marshall* v. *Barlow's, Inc.* (1978) 436 U.S. 307, 315 [56 L.Ed.2d 305, 313, 98 S.Ct. 1816]; *United States* v. *Lace* (2d Cir. 1982) 669 F.2d 46, 56, cert. den. (1982) 459 U.S. 854 [74 L.Ed.2d 106, 103 S.Ct. 121], reh. den. (1982) 459 U.S. 1060 [74 L.Ed.2d 626, 103 S.Ct. 480] [conc. opn.]; *United States* v. *Swart* (7th Cir. 1982) 679 F.2d 698, 701; see also *People* v. *Davis* (1962) 205 Cal.App.2d 517, 520 [23 Cal.Rptr. 152]; *People* v. *Ramsey* (1969) 272 Cal.App.2d 302, 310 [77 Cal.Rptr. 249].) Thus, what is observable by the general public at a commercial establishment is also observable by police officers without a warrant. Moreover, such a search is not unreasonable even if the officers enter the premises purely for an investigative purpose. They do not have to enter for the purpose for which the general public enters. (See 1 LaFave, Search and Seizure (1978) § 2.4(b) and cases cited therein.)

This "open to the public" exception is derived from *Katz* v. *United States* (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 582, 88 S.Ct. 507], in which the court stated: "[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. (Cites omitted.)" This exception to the search warrant requirement has been recognized in numerous circumstances *including* the search of auto salvage yard.

In *State* v. *Dahms* (Minn. 1981) 310 N.W.2d 479, the police conducted a search of the defendant's salvage yard after receiving information from a

---

[3]It is true in *Easley,* the deputy sheriff discovered a number of car parts while looking inside a van. (*Ibid.*) We do not believe, however, this is cause to equate the search conducted in *Easley* with the search in the case at bar which was expressly conducted not for the purpose of examining vehicles but for the purpose of examining vehicle components.

customer which led the officers to suspect the defendant was selling stolen parts. They obtained a search warrant for particular named items, yet while conducting the search, they found numerous other auto parts not specified in the search. The defendant contended this aspect of the search was unreasonable.

The appellate court rejected this contention on two grounds. First, it held the police did not err in examining these additional parts since it was readily apparent to the officers when they picked up these parts they were stolen. Secondly, the court upheld the search under the "open to the public" exception. As the court stated: "[H]ere the premises being searched were commercial premises apparently open to the public. If the public was free to browse through the salvage yard, which covered around 10 acres, then defendant had no reasonable expectation of privacy in the yard and the police, during normal business hours, would have been free to go on the premises without a warrant. [Cites omitted.]" (*Id.,* at p. 481.) (See also *United States* v. *Brandon* (6th Cir. 1979) 599 F.2d 112, 113, cert. den. (1979) 444 U.S. 837 [62 L.Ed.2d 47, 100 S.Ct. 72] [government agents who entered a used car lot and read odometer readings by looking through car windows did not violate the Fourth Amendment since "[t]his was a commercial establishment open to the public . . ."]; *State* v. *Cockrum* (Mo.App. 1979) 592 S.W.2d 300, 303 [law enforcement officers entry into a commercial establishment and examination of appliances in an area open to the public did not violate the defendant's Fourth Amendment rights]; compare *People* v. *Ramsey, supra,* 272 Cal.App.2d at pp. 309-310 [police officers' entry and subsequent search in a commercial enterprise was improper when the enterprise had been locked by the defendants and was not currently open for business]; *United States* v. *Swart, supra,* 679 F.2d at pp. 701-702 [police officers' search of defendant's automobile repair and rebuilding shop was improper since the officers searched the building when it was closed, had no reason to believe the cars searched were in an area generally open to the public, and were not given permission to look around the premises]; see also *People* v. *Superior Court* (1969) 2 Cal.App.3d 131, 134-135 [82 Cal.Rptr. 507].)

 ██ ██ ██ In the case at bar, Norm's Auto Wrecking was a commercial enterprise, open to the public for business.[4] The officers went

---

[4]In ruling on the appellant's 1538.5 motion, the court stated, "Unfortunately there is no evidence one way or the other as to whether this yard was opened to the public who may be interested in purchasing items from parts of cars, scrap and other items. I assume that it was, because the items were marked and the like." The power to draw factual inferences is vested in the trial court. On appeal, the trial court's findings on such matters must be upheld if they are supported by substantial evidence. (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) In the case at bar, substantial evidence supports the trial court's inference. As Officer Keller testified at the hearing on the motion, the inventory in the yard was marked with paint signifying the models and years of manufacture. All the parts were segregated with other parts of the same type.

to Norm's during regular business hours, the gates to the business were open, and did not search any areas of the enterprise from which the public was excluded. The items seized were in the open, accessible to all. Based on the above authorities, appellant cannot assert a reasonable expectation of privacy in these items and thus his Fourth Amendment claim must fail.[5]

## III. THE POLICE OFFICERS DID NOT ERR BY FAILING TO READ TO THE APPELLANT HIS MIRANDA RIGHTS*

. . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment of the trial court is affirmed.

Lillie, P. J., and Thompson, J., concurred.

---

[5]We recognize the police officers when entering the premises told the appellant they were authorized to conduct the search pursuant to section 2805, which as discussed above was incorrect. Yet, this is not a case where the police officers gained entry based on a claim of lawful authority when they indeed had no authority whatsoever under any statutory or constitutional provision. Of course, if the officers had searched areas not open to the public, the result would be different. It should be noted, however, if a similar case arose today, section 2805, as currently modified, would provide the necessary authority for a search of vehicle components when it is conducted in those areas of the business not open to the public or when the business itself is not open to the public.

*See footnote, *ante,* page 1060.