[No. D044290. Fourth Dist., Div. One. Apr. 19, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER POTTER, Defendant and Appellant.

## COUNSEL

Steven J. Carroll, Public Defender, and Tamara Rice Lave, Deputy Public Defender, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Scott Taylor, Daniel Rogers, Rhonda L. Cartwright-Ladendorf and Erika Hiramatsu, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HALLER, J.**—Christopher Potter pleaded guilty to one count of operating a "chop shop" (Veh. Code, § 10801).[1] On appeal, he challenges the trial court's denial of his motion to suppress, contending the court erred in finding the search of an automobile repair shop was authorized by the warrantless administrative search provisions of section 2805. He argues the search was not authorized under section 2805 because the shop was not "open to the public" in the sense that customers were not invited onto the premises. We hold that there is no such open to the public requirement for a warrantless administrative search under section 2805. Accordingly, the trial court properly denied the motion to suppress.

### FACTUAL AND PROCEDURAL BACKGROUND

Potter was an employee of Audio Excellence, a business that performed various automotive services including tire and suspension work, electronics, painting, and the repair and replacement of parts. Its principal place of business was in Bonita, but because the Bonita location lacked sufficient space, Audio Excellence rented property in Spring Valley where its employees could perform overflow work. The Spring Valley location was not intended for customers. After Audio Excellence engaged the customers' business at the Bonita location, Audio Excellence employees took cars to the Spring Valley location. At the Spring Valley location, there were two garages with large rollup doors, a large dumpster, and a rolling gate in front of the property. There were no signs on the property advertising it as Audio Excellence and no posted hours of operation.

---

[1] Subsequent statutory references are to the Vehicle Code unless otherwise specified.

On September 29, 2003, Detective Robin Enns of the San Diego County Sheriff's Department's Regional Auto Theft Task Force was at a towing company across the street from Audio Excellence's Spring Valley location. Detective Enns saw Potter and another individual arrive at the Audio Excellence property, open up the property, and begin working. The two men left the rolling gate and the rollup garage doors open. From the sidewalk in front of the property, Detective Enns could see vehicle parts, assemblies, and tools. As Detective Enns approached the property, more vehicle parts were visible. Detective Enns walked through the open gate and contacted Potter and the other individual in the garage area. She identified herself and told them she was conducting a search under section 2805. During the search, she discovered parts from a stolen truck. The next day, additional stolen car parts were found at Potter's residence.

Potter moved to suppress the evidence discovered during the search of the repair shop, contending the search was not within the purview of the warrantless administrative searches authorized under section 2805 because the Spring Valley location was not open to the public. The trial court denied the motion to suppress, concluding the search was authorized under section 2805 because the business was a repair shop as defined under the statute; the detective was a person authorized under the statute to conduct the search; and the search was reasonable under the circumstances, including the fact that the doors of the business were open. Further, the court found that the Spring Valley location was open to the public, as the work performed there was part of Audio Excellence's public auto repair business.

## DISCUSSION

On appeal, Potter reiterates his argument that the search of the Spring Valley location was not authorized by the warrantless administrative search provisions contained in section 2805 because the location was not open to the public. He focuses on the fact that customers were not *invited* into the Spring Valley location. As we shall explain, neither the Constitution nor statutory law requires that a business solicit customers to enter the premises in order to permit the warrantless inspection.

### A. *Standard of Review*

When reviewing the denial of a motion to suppress evidence, we accept the trial court's factual findings if supported by substantial evidence and independently review whether the search was constitutionally reasonable. (*People v. Hughes* (2002) 27 Cal.4th 287, 327 [116 Cal.Rptr.2d 401, 39 P.3d 432]; *People v. Mays* (1998) 67 Cal.App.4th 969, 972 [79 Cal.Rptr.2d 519].) The facts of this case are essentially undisputed.

## B. *Constitutional Principles Governing Warrantless Searches of Commercial Premises*

To assist our analysis, we first set forth the constitutional authority which allows warrantless searches of commercial premises in certain limited instances.

■ The Fourth Amendment protection against unreasonable searches and seizures applies to commercial premises. (*New York v. Burger* (1987) 482 U.S. 691, 699 [96 L.Ed.2d 601, 107 S.Ct. 2636].) Thus, the government must generally obtain a warrant prior to entry into commercial premises. (*Marshall v. Barlow's, Inc.* (1978) 436 U.S. 307, 312–313 [56 L.Ed.2d 305, 98 S.Ct. 1816].) However, there are several well-established exceptions to the warrant requirement, including (1) the open-to-the-public exception, and (2) the closely-regulated-industry exception. (*Id.* at p. 315; *Donovan v. Dewey* (1981) 452 U.S. 594, 598–600 [69 L.Ed.2d 262, 101 S.Ct. 2534].)

■ Under the open-to-the-public exception, the government may enter and inspect commercial premises that are viewable by the public. (*Marshall v. Barlow's, Inc., supra,* 436 U.S. at p. 315.) "What is observable by the public is observable, without a warrant, by the Government inspector as well." (*Ibid.*; see *People v. Doty* (1985) 165 Cal.App.3d 1060, 1066–1068 [212 Cal.Rptr. 81].) When a business owner opens his business to the public, he or she has no reasonable expectation of privacy in the area; accordingly, the government is free to conduct a search of the items in plain view during normal business hours. (*People v. Doty, supra,* 165 Cal.App.3d at pp. 1066–1067.) Moreover, "such a search is not unreasonable even if the officers enter the premises purely for an investigative purpose. They do not have to enter for the purpose for which the general public enters." (*Id.* at p. 1066.)

■ Under the closely-regulated-industry exception, the owner of a heavily regulated business is deemed to be on notice that his business premises will be subject to periodic warrantless administrative searches by government agents pursuant to a statutory inspection scheme. "Business owners in the heavily regulated industries are presumed to know that they are subject to the periodic inspections which are specified by and regularly carried out pursuant to enabling legislation." (*Ingersoll v. Palmer* (1987) 43 Cal.3d 1321, 1332–1333 [241 Cal.Rptr. 42, 743 P.2d 1299].) States may enact regulatory schemes that allow warrantless inspections of closely regulated industries because "the expectation of privacy that the owner of commercial

property enjoys in such property differs significantly from the sanctity accorded an individual's home[;] . . . this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections." (*Donovan v. Dewey, supra,* 452 U.S. at pp. 598–599.) "[W]here the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment." (*New York v. Burger, supra,* 482 U.S. at p. 702.)

■ However, even when the closely-regulated-industry exception dispenses with the warrant requirement, the Fourth Amendment still requires that the government's intrusion into the property be reasonable. (*Donovan v. Dewey, supra,* 452 U.S. at pp. 599–600.) The regulatory scheme authorizing warrantless inspections must meet three requirements: (1) the scheme must serve a substantial government interest; (2) the warrantless inspections must be necessary to further the regulatory scheme; and (3) the inspection program "must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." (*New York v. Burger, supra,* 482 U.S. at pp. 702–703.) To perform the advisory function, the statute must be " 'sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.' " (*Id.* at p. 703.) To limit governmental discretion, the statute must be " 'carefully limited in time, place, and scope.' " (*Ibid.*)

If a regulatory scheme providing for warrantless searches fails to meet these constitutional criteria, then the government may only conduct a warrantless search of the business premises to the extent the premises are open to the public. (See *Donovan v. Dewey, supra,* 452 U.S. at pp. 599, 604, fn. 9; *Marshall v. Barlow's, Inc., supra,* 436 U.S. at p. 315; *See v. City of Seattle* (1967) 387 U.S. 541, 545 [18 L.Ed.2d 943, 87 S.Ct. 1737].)

C. *Section 2805*

■ Section 2805 is a regulatory scheme providing for warrantless administrative searches. Section 2805, subdivision (a), states: "For the purpose of locating stolen vehicles . . . a member of a county sheriff's office . . . whose primary responsibility is to conduct vehicle theft investigations, may inspect any vehicle of a type required to be registered under this code, or any

identifiable vehicle component thereof, on a highway or in any public garage, repair shop, terminal, parking lot, new or used car lot, automobile dismantler's lot, vehicle shredding facility, vehicle leasing or rental lot, vehicle equipment rental yard, vehicle salvage pool, or other similar establishment . . . in order to establish the rightful ownership or possession of the vehicle or identifiable vehicle component. . . ."

Section 2805 permits warrantless administrative inspections only "[f]or the purpose of locating stolen vehicles." (§ 2805, subd. (a).) It lists the specific type of vehicle-related businesses that may be inspected. Only law enforcement officers "whose primary responsibility is to conduct vehicle theft investigations" may make the inspections. (*Ibid.*) Further, the statute requires that "[w]henever possible, inspections . . . shall be conducted at a time and in a manner so as to minimize any interference with, or delay of, business operations." (§ 2805, subd. (c).)

Recognizing that the section does not allow indiscriminate, broad searches of business premises but rather only permits searches that are "conducted under reasonable circumstances and limited in nature," the courts have repeatedly concluded that section 2805 passes constitutional muster. (*Terry York Imports, Inc. v. Department of Motor Vehicles* (1987) 197 Cal.App.3d 307, 314 [242 Cal.Rptr. 790]; see *People v. Calvert* (1993) 18 Cal.App.4th 1820, 1836 [23 Cal.Rptr.2d 644]; *People v. Lopez* (1981) 116 Cal.App.3d 600, 607 [172 Cal.Rptr. 236]; *People v. Grey* (1972) 23 Cal.App.3d 456, 461 [100 Cal.Rptr. 245]; see also *New York v. Burger, supra,* 482 U.S. at pp. 703–716 [statute authorizing warrantless administrative search of vehicle dismantling facility to identify compliance with record keeping requirements is constitutional].)

### D. *"Open to the Public" Criteria*

With these principles in mind, we now turn to Potter's argument that the warrantless search of the Spring Valley location was unauthorized because the shop was not open to the public in the sense that customers were not invited onto the premises.

There is no "open to the public" requirement expressly stated in the language of section 2805. The "open to the public" standard is typically applied when there is no constitutionally-valid regulatory scheme authorizing a warrantless administrative search. For example, in *People v. Doty, supra,* 165 Cal.App.3d at pages 1064–1065, the court held a section 2805 search was not valid because the search was for vehicle parts at a time when the language of

section 2805 only authorized searches for vehicles.[2] The *Doty* court nevertheless held the search was constitutional because the appellant's auto wrecking yard was open to the public, the items found were in plain view, and the officers did not search any areas where the public was excluded; accordingly, the search fell under the "open to the public" exception to the warrant requirement. (165 Cal.App.3d at pp. 1066–1068.) *Doty* reasoned that under the "open to the public" exception, when commercial premises are open to the public so as to allow the public to freely browse the premises, the police are equally entitled to enter and observe items in plan view during normal business hours. (*Id.* at p. 1067.)

To support his argument that an automobile repair shop must be open to the public to justify a section 2805 search, Potter cites *People v. Roman* (1991) 227 Cal.App.3d 674 [278 Cal.Rptr. 44], and *People v. Calvert, supra,* 18 Cal.App.4th 1820. Each of these decisions generally states that "Vehicle Code section 2805 [authorizes] searches of places open to the public." (*People v. Roman, supra,* 227 Cal.App.3d at p. 679; *People v. Calvert, supra,* 18 Cal.App.4th at p. 1828.) A close reading of these decisions, however, shows that this statement was not made in the context of the "open to the public" exception to the warrant requirement. Rather, the statement arose in the context of distinguishing between premises that involve private, noncommercial activities not subject to section 2805 searches, and premises that are open for commercial business and therefore properly within the purview of the warrantless inspection scheme.

In *Roman*, the appellate court agreed with the lower court's conclusion that a search was not authorized under section 2805 under circumstances where the defendants rented a garage in a commercial building, told the landlord they wanted the space to replace the engine in their truck, and kept the garage locked. (*People v. Roman, supra,* 227 Cal.App.3d at pp. 677–678.) The *Roman* court held section 2805 did not authorize a warrantless search because "[t]his was no administrative search of a closely regulated business in which the owner or operator had a reduced expectation of privacy. [Citations.] That defendants rented this enclosed space in a commercial building did not diminish their expectation of privacy or transform the rented premises into a public garage." (*People v. Roman, supra,* at p. 679.) In *Calvert,* the appellant argued that his shop was not open to the public because the work performed was only on his privately owned vehicles; no business for the public was conducted on the premises; and the business had no posted signs on the building, did not advertise, and did not have a listed telephone number. (*People v. Calvert, supra,* 18 Cal.App.4th at pp. 1828–1829.) We rejected this argument and affirmed the lower court's contrary finding based on evidence

---

[2] Section 2805 was later amended to include vehicle parts. (Historical and Statutory Notes, 65B West's Ann. Veh. Code (2000 ed.) foll. § 2805, p. 349.)

that other persons' cars were worked on at the shop, the business kept regular hours and had a glass-front showroom displaying vehicles, and prospective purchasers of vehicles would come to the business. (*Id.* at p. 1829.)

The *Roman* court rejected the applicability of section 2805 because the rented garage was not a public garage; nor did it constitute a closely regulated business as contemplated by the statute. In *Calvert*, we upheld a lower court's finding that the business was open to the public because there were facts showing work at the shop included services and sales to the public, not just work on appellant's own vehicles. Thus, both *Roman* and *Calvert* support that the pivotal inquiry under section 2805 is whether the inspected premises comprise a business providing auto-related services to the public, rather than premises utilized by private individuals with no services provided to the public. Although the fact that the public is invited to enter the premises may be a relevant factor in deciding whether the premises constitute a commercial operation rather than a private activity, neither *Roman* nor *Calvert* establishes that the business *must* invite customers onto its premises in order to fall within the inspection provisions of section 2805.[3]

The Constitution likewise does not require a standard based on whether the public is invited onto the premises. Warrantless administrative searches are valid under the Fourth Amendment not because a business owner has no reasonable expectation of privacy *from the public*, but because the owner of a closely regulated business has no reasonable expectation of privacy *from administrative inspections* in furtherance of a valid regulatory scheme. "[T]he theory of the closely regulated business exception is that inspection and visitation *by agents of the government* under the regulations are so regular and frequent that the licensee has no reasonable expectation of privacy." (*Pinney v. Phillips* (1991) 230 Cal.App.3d 1570, 1584–1585 [281 Cal.Rptr. 904], italics added.) In closely regulated industries, whether a business owner has invited the public into his business—or to what extent he has done so—does not determine his expectation of privacy from inspections by government officers. Rather, under section 2805 the owner's expectation of privacy is defined by whether auto-related commercial activity—as opposed to personal activity—is being conducted on the premises. As long as the inspected premises constitute a commercial enterprise as contemplated by section 2805, the business owner and his employees are on notice that they cannot expect to be free from periodic inspection.

---

[3] Potter cites several cases from other jurisdictions to support his claim that the Spring Valley location was not amenable to a section 2805 search because the public was not invited onto the premises. None of these cases involved regulatory inspection schemes; rather, they merely discuss the general rule that the authorities may inspect items displayed for the public without a warrant. (See, e.g., *State v. Dahms* (Minn. 1981) 310 N.W.2d 479, 480–481; *State v. Cockrum* (Mo.Ct.App. 1979) 592 S.W.2d 300, 302–303; *United States v. Brandon* (6th Cir. 1979) 599 F.2d 112, 113.)

An examination of other types of permissible warrantless administrative inspections further supports that the propriety of a warrantless administrative search does not turn on whether a business solicits the public to enter its premises. For example, the Fish and Game Code permits warrantless inspections of fishing vessels and fish processing facilities—places not likely to invite public access. (Fish & G. Code, § 7702; see *People v. Harbor Hut Restaurant* (1983) 147 Cal.App.3d 1151, 1155–1156 [196 Cal.Rptr. 7].) In a seminal case on warrantless administrative searches, *Donovan v. Dewey*, the Supreme Court affirmed the constitutionality of a statute allowing searches of underground and surface mines—again, places that the general public would not normally go. (*Donovan v. Dewey, supra*, 452 U.S. at p. 596.)

Finally, a requirement that the public must be invited to enter the business would exempt auto-related businesses or portions thereof that are usually not visited by the public either because of the nature of their operations (i.e., automobile shredding facilities) or because of safety considerations, even though those businesses or areas have no higher expectation of privacy from administrative searches. This interpretation would not effectuate the legislative intent embodied in the section 2805 inspection scheme.

### E. The Search of the Spring Valley Location

The search here easily meets the applicable criteria for a warrantless administrative search under section 2805. The search was performed by a detective who was an auto theft investigator for the sheriff's auto theft task force.[4] Section 2805 applies to a "repair shop," and there is no dispute that the Spring Valley location operated as a repair shop to handle the overflow work from the main shop in Bonita.[5] The Spring Valley location was rented specifically to conduct the business of auto repair and installation for the public. This was not individuals renting a closed garage, as in *Roman*. At the time of the search of the Spring Valley location, the gate and garage doors were open, the men were working in the garage, and indicia of an auto repair business were apparent. In short, the Spring Valley location fell within the purview of section 2805 because it was operating an auto repair business for the public, and at the time of the search it was conducting its operations in a manner that indicated it was open for commercial business.

---

[4] There is no contention that the detective did not satisfy section 2805's requirement that the searching officer's primary job responsibility be vehicle theft investigation.

[5] Section 510 defines "repair shop" as "a place where vehicles subject to registration under [the Vehicle Code] are repaired, rebuilt, reconditioned, repainted, or in any way maintained for the public at a charge."

## DISPOSITION

The judgment is affirmed.

McConnell, P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 27, 2005.