Filed 5/22/14  Jones v. Su CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PRISCILLA JONES,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JULIE A. SU, as Labor Commissioner,<br><br>        Defendant and Respondent. | A137942<br><br>(Sonoma County<br>Super. Ct. No. SCV251888) |

## INTRODUCTION

Plaintiff Priscilla Jones appeals from a trial court order denying her petition for writ of mandate.  Plaintiff had challenged a final agency decision by defendant Julie A. Su, Labor Commissioner of the State of California and Director of the Department of Labor Standards Enforcement (DLSE) that upheld penalties and assessments.  She asserts the penalties resulted from evidence improperly obtained by a warrantless search conducted in violation of her Fourth Amendment rights.  We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is the owner of Jones Rabbit Farm, a business located and conducted on the same property as her residence in Santa Rosa.  The business raises and butchers rabbits that are then sold to restaurants.  The farm is not open to the public.

On March 26, 2012, Toresa Stikes, a deputy labor commissioner employed by the DLSE, and Richard Gage, a deputy labor commissioner employed by the Division of Wage Claims, entered onto plaintiff's property.  After interviewing plaintiff and other persons who were present, Stikes issued an order stopping plaintiff from using any

employees until she had secured workers' compensation insurance. A penalty of $4,500 was assessed against her. Stikes also issued citations stating that employees were paid wages without the required itemized wage statements, and that employees had been paid below the minimum wage or had received no wages for hours worked. Penalties of $2,750 and $400, respectively, were assessed for these violations.

Plaintiff filed an administrative appeal of the citations. The appeal hearing was held on April 25, 2012. At the outset of the hearing, plaintiff presented a motion to quash the citations. Among other grounds, the motion claimed the deputies' entry on to her property constituted a warrantless search in violation of the Fourth Amendment of the United States Constitution and article 1, section 13 of the California Constitution.

On May 1, 2012, plaintiff submitted a memorandum in support of the motion to dismiss the citations.

On May 8, 2012, the hearing officer rendered decisions regarding plaintiff's appeal. The officer concluded plaintiff had violated Labor Code section 3700 by failing to provide workers' compensation insurance for two employees engaged in processing rabbits. The officer also found plaintiff had failed to pay minimum wage to one employee, Tim Webb, on at least two occasions. Finally, the officer found plaintiff had failed to provide itemized deduction statements to Webb and another employee on at least 10 occasions. The penalty assessment was set at $5,700.

On June 22, 2012, plaintiff filed a petition for writ of mandate in the superior court, challenging the administrative decision and penalty assessments. She asserted the decision was based upon information illegally obtained from an unconstitutional warrantless search.

On December 17, 2012, the trial court filed its order. As to the Fourth Amendment issue, the court found the facts supported the conclusion that plaintiff and her employees had voluntarily consented to the interviews with Stikes and Gage. The court also concluded plaintiff's business was exempt from the warrant requirement under

the exception for administrative inspections of closely regulated industries. The court denied plaintiff's petition for writ of mandate and dismissed the same. This appeal followed.

## DISCUSSION

### I. *Standard of Review*

We construe plaintiff's appeal as one arising from the denial of a motion to suppress the evidence. "When reviewing the denial of a motion to suppress evidence, we accept the trial court's factual findings if supported by substantial evidence and independently review whether the search was constitutionally reasonable. [Citations.]" (*People v. Potter* (2005) 128 Cal.App.4th 611, 617 (*Potter*).)

### II. *Fourth Amendment Protections Are Not Implicated*

#### A. *Facts Relating to the Officer's Entry on to Plaintiff's Property*

At the administrative hearing, Stikes testified that she conducted an inspection of Jones Rabbit Farm after a complaint was received by the DLSE's Bureau of Field Enforcement. She did not have a subpoena or a warrant when she conducted the inspection. Prior to the events described below, she had gone to the property twice and had knocked on the door but no one answered.

The property where the business is located has a personal residence in the front with a half-circle driveway. If one is facing the house from the street, there is a second driveway on the right that goes to the back of the property. Stikes and Gage entered the second driveway and parked in a small lot. Three other vehicles were parked in the lot. There was a shed or barn right next to the parking area. In front of the shed was a large trash can that was almost full of fresh rabbit hides. Behind the first barn was another barn that had cages stacked in front of it.

Inside the first barn, Stikes saw three people working at a table processing rabbits. They were all wearing long yellow aprons. She knocked on the screen door and identified herself. Plaintiff, one of the three people inside, indicated she was the owner.

3

She did not have a business license available for Stikes to see, but gave her a business card and a sticker indicating the meat had been inspected for wholesomeness by the California Department of Agriculture.

Stikes asked plaintiff which employees were working that day. Plaintiff said she has only one employee, Glenda Gibson, who makes $10 per hour. She said Gibson works three to four hours a day, four days a week. The rabbits are processed on Mondays, and Gibson helps with other tasks such as cleaning the cages and taking care of the animals during the rest of the week. She is paid by check and is not issued deduction statements. The other worker was Webb, who plaintiff identified as a volunteer.

Gage testified Webb declined to answer questions but did say that he had been helping plaintiff on an intermittent basis for some months by performing such tasks as repairing rabbit cages and moving things that were too heavy for plaintiff. He said he did this as a volunteer for plaintiff, who attended the same church as he did. Gage testified that the people on the property had stopped working when he arrived with Stikes, but they all were wearing aprons with blood on them, so he presumed they had been processing rabbits.[1]

Webb submitted a declaration stating that he was sitting on a bench in the backyard when he saw a car with two people drive up. He told plaintiff someone had arrived. He went to meet the visitors at the door and the two people asked for plaintiff. The man wanted to ask Webb questions. Webb asked if he was required to talk. The man said no, so Webb told him that he did not want to speak to him. The man left Webb alone.

During her interview with plaintiff, Stikes observed a man leave the barn through another door. He told Stikes that she needed to leave because plaintiff needed to get back

---

[1] The hearing officer concluded Gibson was a residence employee, and was not engaged in the processing of rabbits for Jones Rabbit Farm.

to work. He then drove off in his truck. Plaintiff identified him as Gary Osman, a trainee who is learning how to process rabbits. Neither he nor Webb receive any wages or compensation for their work. Stikes asked plaintiff if she had workers' compensation insurance and she said she did not. She said she was covered for workers' compensation under her homeowners policy.

Stikes contacted plaintiff's insurance company and asked if Jones Rabbit Farm was covered by the homeowners policy. She was told that the homeowners policy did not cover the business, nor would it cover any of the employees working as rabbit processors. The policy states it covers employees who work in the residence, but excludes from coverage employees of for-profit businesses.[2]

## B. *Trial Court's Findings*

Based on its review of the administrative record, the trial court found the following facts: "In this case, the facts here indicated that [Stikes and Gage] entered [plaintiff's] property without a warrant to enter and inspect the property. Stikes and Gage are not uniformed police officers who did not make any show of authority, force or threat toward [plaintiff] or the other individuals present for the inspection. [Plaintiff's] own witness, Gary Osman, felt free to walk away from the area during Stikes' interview of [plaintiff], and, while doing so, challenged Stikes by telling her that she needed to leave [plaintiff] alone because [plaintiff] needed to get back to work. Osman then got in his truck and drove off, without any resistance from the DLSE inspectors. Similarly, employee Tim Webb refused to complete a questionnaire with Deputy Gage, with absolutely no consequence from the DLSE inspectors." (Record citations omitted.) Based on our review of the record, substantial evidence supports the court's evidentiary findings.

---

[2] Plaintiff obtained workers' compensation insurance coverage on April 9, 2012.

As to the Fourth Amendment issue, the trial court concluded plaintiff and her employees had voluntarily consented to the interviews with Stikes and Gage. The court observed plaintiff voluntarily showed Stikes her check register showing her personal check payment for Gibson's wages. She also gave Stikes a business card and a Department of Agriculture sticker that she places on packaged rabbit meat. The record showed no facts supporting any attempt by her to terminate the encounter, any coercion for her to continue the encounter, or any facts undermining her consent to the interview.

## C. *No Search Occurred*

Plaintiff challenges the denial of her motion to exclude the evidence obtained by the DLSE deputies. She asserts her business is not open to the public, and claims the DSLE deputies did not have the right to enter and search her property without a subpoena or warrant. She complains that the deputies "made their entry to [her] residence by driving, without permission, to the rear of her house." She contends they "could not observe anything until they left their vehicle and looked through a closed door."[3] She also asserts she was never advised that she had the right to refuse to speak with the deputies and was not shown any identification. We conclude what occurred here was simply a consensual interview.

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." (U.S. Const., 4th Amend.) This guarantee has been incorporated into the Fourteenth Amendment to the federal Constitution and is applicable to the states. (See *Mapp v. Ohio* (1961) 367 U.S. 643 [federal exclusionary rule applicable to the states].) A similar guarantee against unreasonable government searches is set forth in the state Constitution. (Cal. Const., art. I, § 13.)

---

[3] The closed door was a screen door, allowing the interior to be visible.

6

In deciding whether a search occurred, "[t]he 'ultimate standard set forth in the Fourth Amendment is reasonableness' . . . [and] we ask two threshold questions. First, did the defendant exhibit a subjective expectation of privacy? Second, is such an expectation objectively reasonable, that is, is the expectation that one society is willing to recognize as reasonable? [Citations.]" (*People v. Camacho* (2000) 23 Cal.4th 824, 830-831.) Here, we will assume plaintiff exhibited a subjective expectation of privacy, in that she did not expect DLSE deputies to enter onto her private property without advance notice. We thus turn to address whether, under all the facts, her expectation of privacy was objectively reasonable.

In 1967, the United States Supreme Court in *Katz v. United States* (1967) 389 U.S. 347 (*Katz*), affirmed that constitutional limitations on police searches and seizures protect "people, not places." (*Id.* at p. 351.) Under the *Katz* standard as applied in California, the propriety of a warrantless governmental surveillance has come to encompass an assessment of the reasonableness of the individual's expectation of privacy in a particular situation, wherever he is, and whether or not government agents trespassed physically on his property interests. (See, e.g., *Lorenzana v. Superior Court* (1973) 9 Cal.3d 626, 638; *People v. Edwards* (1969) 71 Cal.2d 1096, 1103 (*Edwards*).) The inquiry is whether the government intruded unreasonably on an expectation of privacy which society is prepared to recognize as valid. (*People v. Chapman* (1984) 36 Cal.3d 98, 106.) Here, plaintiff asserts the DLSE deputies made a "warrantless entry to her home" "by driving, without permission, to the rear of her house" and then looking through a "closed door." We conclude the deputies' conduct did not amount to an unreasonable government search.

"Though location is no longer the sine qua non of search-and-seizure analysis, it remains relevant under the *Katz* test. The privacy one is entitled to expect in a particular place is governed primarily by common habits in the use of such property. [Citations.]" (*People v. Cook* (1985) 41 Cal.3d 373, 379.) Thus, courts "guard with particular zeal an

7

individual's right to carry on private activities within the interior of a home or office, free from unreasonable governmental intrusion. [Citations.] We also recognize a high privacy interest in the 'curtilage' of a residence — that zone immediately surrounding the home where its private interior life can be expected to extend. [Citation.] For example, a government agent without a warrant may not peer through barriers reasonably calculated to shield one's yard from public view, even if the officer is standing in a 'public' place. [Citations.]" (*Ibid.*)

Assuming plaintiff's driveway was part of the curtilage, the question before us is whether the DLSE deputies nevertheless acted reasonably in approaching the residence from the driveway to make contact with plaintiff and the other persons on the site. We note there is no evidence that a "private property, no trespassing" sign was present at the beginning of the driveway to suggest the property was cut off from intrusion. Even if such a sign had been present, as the United States Supreme Court has observed: "The existence of a physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated . . . ." (*United States v. Karo* (1984) 468 U.S. 705, 712-713.)

It may be — we do not decide the issue — that the DLSE deputies committed some sort of technical trespass in venturing up plaintiff's private driveway to the parking area behind the residence. We conclude, however, that this factor is not determinative. In *People v. Thompson* (1990) 221 Cal.App.3d 923 (*Thompson*), the appellate court noted " '[the California] Supreme Court has made clear that a police officer who makes an uninvited entry onto private property does not per se violate the occupant's Fourth Amendment right of privacy. The criterion to be applied is whether entry is made into an area where the public has been implicitly invited, such as the area furnishing normal access to the house. A reasonable expectation of privacy does not exist in such areas. [Citation.]' " (*Id.* at p. 942.) Even if the trespassing factor came into play at some point, moreover, it is not particularly significant. (See *People v. Manderscheid* (2002) 99

8

Cal.App.4th 355, 361.)  Indeed, about the same time as our Supreme Court decided *Edwards,* it held in *People v. Terry* (1969) 70 Cal.2d 410 (*Terry*), a case involving police entry into and discovery of contraband in a common area of an apartment building (i.e., its garage) that "[e]ven if . . . the officers' entry into the garage was a technical trespass, their observations therein . . . did not constitute an unreasonable search."  (*Id*. at p. 427.)

Notwithstanding the remote nature of plaintiff's residence, others, such as United Parcel Service drivers, newspaper delivery people, or lost travelers, would normally be permitted to approach her residence to make a delivery or ask for help.  " 'It is clear that police with legitimate business may enter areas of the curtilage which are impliedly open, such as access routes to the house.  In so doing they are free to keep their eyes open.  [Citation.]  An officer is permitted the same license to intrude as a reasonably respectful citizen.  [Citation.]' "  (*Thompson, supra,* 221 Cal.App.3d at p. 943.)  In the present matter, substantial evidence supports the conclusion that the driveway to plaintiff's business was not closed to public access and that, when the DLSE deputies approached the door to the barn, they did so for the purpose of making contact with the persons inside.  Under these circumstances, the deputies' conduct was reasonable; hence, there was no Fourth Amendment violation with respect to their presence on plaintiff's property.

Substantial evidence also supports the conclusion that Stikes and Gage conducted consensual interviews.  It is settled that "[n]o Fourth Amendment privacy interests are invaded when an officer seeks a consensual interview with a suspect."  (*People v. Coddington* (2000) 23 Cal.4th 529, 581, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)  "Mere questioning is neither a search nor a seizure."  (*People v. Brown* (1998) 62 Cal.App.4th 493, 499; accord, *Florida v. Bostick* (1991) 501 U.S. 429, 439-440.)  In the present case, there was no show of authority and a reasonable person would have felt free to decline to speak with the deputies.  Indeed, both Webb and Osman chose not to answer questions, and there is no evidence that

plaintiff was coerced into cooperating with Stikes. Accordingly, as no Fourth Amendment interests were implicated, the trial court did not err in denying plaintiff's writ petition.

In light of our conclusions, we need not address the parties' remaining arguments.

**DISPOSITION**

The order is affirmed.

_____
Dondero, J.

We concur:

_____
Margulies, Acting P.J.

_____
Banke, J.